**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Randolph A. PARKER, Defendant–Appellee.**

**No. 92–10462.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1993.

Decided Sept. 28, 1993.

---

Martha Boersch and Rory K. Little, Asst. U.S. Attys., San Francisco, CA, for plaintiff-appellant.

Harry L. Hellerstein, Asst. Federal Public Defender, San Francisco, CA, for defendant-appellee.

Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE,* District Judge.

REINHARDT, Circuit Judge:

The United States appeals the district court's refusal to sentence Randolph Parker to a fifteen-year term of imprisonment upon his conviction of possession of a firearm by a felon, 18 U.S.C. § 922(g). We conclude that, in determining whether a prior conviction following a jury trial was a "violent felony" for purposes of the armed career criminal provision, 18 U.S.C. § 924(e), the sentencing court may not resort to the charging instrument alone. Nor may it resort solely to the charging paper and verdict form where the form fails to reflect that the requisite facts were found by the jury. We therefore affirm.

**I**

On February 20, 1992, a jury found Parker guilty of one count of possession of a firearm by a felon, 18 U.S.C. § 922(g). On the basis

---

* Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

of convictions for assaults of police officers in 1972 and 1977 and for second-degree burglary in 1968, the presentence report concluded that Parker fell under the armed career criminal provision, 18 U.S.C. § 924(e). Under that statute, a felon convicted of possessing a firearm who has three previous convictions "for a violent felony or a serious drug offense" must receive a minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 924(e)(1).

Parker argued that his 1968 conviction under Cal.Penal Code § 459, the state's second-degree burglary statute, could not be properly counted as a "violent felony." The government contended that the 1968 charging instrument shows that the jury conviction was for residential burglary, which it argued is a categorical "violent felony." According to the 1968 information, Parker and a co-defendant "enter[ed] a residence ... with intent to commit theft therein."

After extensive briefing and argument by both parties, the district court concluded that the 1968 conviction was not for a "violent felony" and sentenced Parker to 21 months' imprisonment, the upper limit of the applicable guideline range.[1] The district court decided that it could properly look to the 1968 charging paper in determining if the conviction was for a "violent felony." In doing so, however, the court erroneously concluded that the information did not specify that the burglary was of a residence. Nonetheless, the court further determined that even if the burglary were of a "residence," it did not thereby qualify as a "violent felony."

The government appeals Parker's sentence, arguing that his 1968 burglary conviction was for a "violent felony" under section 924(e)(2)(B)(ii). It relies principally on the charging instrument—in this case, an information.

## II

The armed career criminal statute defines "violent felony" as any crime punishable by imprisonment of more than a year that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). In determining whether a prior conviction was for a "violent felony," the sentencing court must apply a "categorical approach." Under this approach, "the trial court may, under both subsections (i) and (ii), look only to the fact of conviction and to the statutes establishing the crimes of which the defendant was convicted." *United States v. Sherbondy*, 865 F.2d 996, 1009 (9th Cir.1988). Thus, the sentencing court may never look to the specific facts underlying a conviction to determine if it was for a "violent felony." Under *Sherbondy*, a conviction counts as a "violent felony" only if the statutory definition of the offense satisfies section 924(e); if the statute does not, the conviction may not be counted as a "violent felony" regardless of whether the *actual* deeds underlying the conviction satisfy the section 924(e) definition.

After we adopted the "categorical approach" in *Sherbondy*, the Supreme Court endorsed it in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), a case involving the definition of "burglary" in section 924(e)(2)(B)(ii). The Court termed "persuasive" the reasoning of cases adopting "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600, 110 S.Ct. at 2159. Despite this general endorsement, the Court held that the categorical approach might "permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." *Id.* at 602, 110 S.Ct. at 2160.

Because it reaches conduct that does not satisfy the definition in section 924(e)(2)(B), the statutory offense in Cal.Penal Code

---

1. The probation office calculated an offense level of 10 (including an adjustment for acceptance of responsibility) and a criminal history category of IV, yielding a range of 15–21 months.

§ 459 does not qualify as a "violent felony" under the strict *Sherbondy* categorical approach. *See United States v. O'Neal*, 937 F.2d 1369, 1373 (9th Cir.1991) (section 459 broader than definition of "burglary" in armed career criminal provision); *United States v. Chatman*, 869 F.2d 525, 530 (9th Cir.1989) (section 459 violation may be proved without establishing conduct that presents serious potential risk of harm to another). Therefore, the government's appeal relies upon *Taylor*'s "refinement of the categorical approach," *O'Neal*, 937 F.2d at 1373, allowing the sentencing court in some circumstances to go beyond the fact of conviction and the statutory definition of the offense. Specifically, the government argues that, under *Taylor*, the allegation in the 1968 information that Parker burglarized a "residence" renders the crime a "violent felony" even though Cal.Penal Code § 459 does not generally define a "violent felony."

### A

Although Parker's 1968 conviction was for "burglary" as defined by California law, the government concedes that, even under *Taylor*, the conviction does not constitute "burglary" for purposes of section 924(e). Neither the definition of the crime in Cal.Penal Code § 459 nor the 1968 information charging Parker with violating that statute include "unlawful or unprivileged" entry, which the Supreme Court has held is a necessary element of "burglary" under the "violent felony" definition in section 924(e)(2)(B)(ii). *See Taylor*, 495 U.S. at 598–99, 110 S.Ct. at 2158.

■ Instead, the government contends that Parker's 1968 conviction satisfies the "otherwise" clause in the "violent felony" definition as a crime that "involves conduct that presents a serious potential risk of physical injury to another." *Cf. Taylor*, 495 U.S. at 600 n. 9, 110 S.Ct. at 2159 n. 9 (government may argue that "offenses similar to generic burglary" satisfy "otherwise" clause).[2] However, the government's reliance on the "otherwise" clause distinguishes this case from *Taylor*, and presents a major potential obstacle to application of the Supreme Court's modified categorical approach.

The government blithely assumes that *Taylor* announced a general modification of the *Sherbondy* categorical approach rather than one confined to "burglary" clause cases. This conclusion is far from obvious. Prior to *Taylor*, the law in this Circuit proscribed reliance on *anything* except the statutory definition of the crime and the fact of convic-

---

**2.** We note that the absence of an allegation of "unlawful or unprivileged" entry, which precludes a finding that the 1968 conviction was for "burglary" under section 924(e), may also prevent its classification as a "violent felony" under the "otherwise" clause. Reference to the charging allegations, even where appropriate, does not allow a sentencing court to examine the actual facts underlying the conviction. Rather, the court should, as with a statutory offense definition, consider *all* criminal conduct covered by the argued categorical "violent felony." The issue then would be whether "entering a residence with intent to commit theft therein" inherently "involves conduct that presents a serious potential risk of physical injury to another." *See United States v. Anderson*, 989 F.2d 310, 312 (9th Cir.1993) (§ 924(e) covers "crimes that inherently—as defined in the abstract, not necessarily as committed in the particular case" meet the statutory definition). The government relies on *United States v. Becker*, 919 F.2d 568 (9th Cir.1990), *cert. denied*, 499 U.S. 911, 111 S.Ct. 1118, 113 L.Ed.2d 226 (1991), in which we held that California first-degree burglary of a residence is a "crime of violence" under the Sentencing Guidelines career offender provision because it "involves a substantial risk that physical force against the person or property of another may be used." *Id.* at 569. In *Becker*, however, we concluded that, although California's first-degree burglary statute does not require unlawful entry, the element had in effect been read into the statute through the history of prosecutions under the first-degree statute. *See* 919 F.2d at 571 n. 5 (concluding that Cal.Penal Code § 460 has not been applied against privileged entries). Neither the second-degree burglary statute nor the allegations in Parker's 1968 information similarly include—explicitly or implicitly—an "unlawful entry" element. Therefore, the charges in the 1968 information potentially reach the conduct of lawful entrants, including invitees. A social guest, au pair, or domestic could be convicted under these same allegations if he or she decided to pocket some silverware or other valuables. Similarly, if a stockbroker goes to an associate's home to conspire to commit stock fraud or some other form of theft, the allegations in the 1968 information would reach his conduct. *Cf. Becker*, 919 F.2d at 571 n. 5 (conspiring stock trader would not be covered by § 460). "Home shoplifting" and stock fraud would hardly appear to entail "a serious potential risk of physical injury to another."

tion in determining if a conviction was for a "violent felony." This rule, established by *Sherbondy*, remains controlling precedent until overruled by the Supreme Court, our own court sitting en banc, or subsequent legislation. *See Bonin v. Vasquez*, 999 F.2d 425, 427–28 (9th Cir.1993); *Montana v. Johnson*, 738 F.2d 1074, 1077 (9th Cir.1984) (binding effect of decisions by prior panels). *Taylor* permitted a deviation from *Sherbondy*'s strict categorical approach in section 924(e) "burglary" cases, but nothing in *Taylor* suggests that the Court intended to approve a general departure in all cases. Specifically, the Court never suggested that looking beyond the statute and fact of conviction is appropriate in cases applying the "otherwise" clause.

Indeed, in *Taylor*, the Court expressed explicit approval of *Sherbondy* and the approach it adopted. *See* 495 U.S. at 600, 110 S.Ct. at 2159. Moreover, the Court's refinement of the categorical approach established by *Sherbondy* and other cases is, by its terms, to apply to "a *narrow range of cases* where a jury was actually required to find *all the elements of generic burglary.*" *Id.* at 602, 110 S.Ct. at 2160 (emphasis added). Consistent with this limited deviation from the strict categorical approach, we have only applied the *Taylor* refinement to cases involving the "burglary" clause. *See United States v. Alvarez*, 972 F.2d 1000, 1005–06 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1427, 122 L.Ed.2d 795 (1993); *O'Neal*, 937 F.2d at 1373–74; *United States v. Sweeten*, 933 F.2d 765, 770–72 (9th Cir.1991).[3] Our cases have never employed this exceptional procedure—looking beyond the statutory definition of an offense—in applying the "otherwise" clause of subsection (ii). Nothing in *Taylor* or the cases following it suggests the broad overruling of *Sherbondy* the government's appeal depends upon.

Moreover, allowing departure from the strict categorical approach in cases involving the "otherwise" clause would hardly confine the *Taylor* refinement to a "narrow range" of cases as the Court intended. The "other-

wise" clause is a residual definition of "violent felony"—"a general description that serves to *expand* the intended categories." *Sherbondy*, 865 F.2d at 1008 (emphasis added). If the Court envisioned application of the *Taylor* refinement to the "otherwise" clause, its "narrow range" characterization is curiously understated.

For these reasons, the government's assumption that the *Taylor*-modified categorical approach is proper in determining if a conviction satisfies the "otherwise" clause is highly dubious. Nonetheless, we need not decide whether *Sherbondy* and *Taylor* allow the sentencing court to go beyond the statutory definition and fact of conviction in cases in which the offense is covered by the "otherwise" clause. Because we affirm the district court's refusal to apply the armed career criminal enhancement to Parker on other grounds, we assume without deciding, for purposes of this appeal, that the *Taylor*-modified categorical approach is applicable here.

### B

In *Taylor*, the Court held "that an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if ... *the charging paper and jury instructions* actually required the jury to find all the elements of generic burglary in order to convict the defendant." 495 U.S. at 602, 110 S.Ct. at 2160 (emphasis added). Here, however, the jury instructions from Parker's 1968 second-degree burglary conviction are no longer available. Assuming that it is permissible to look beyond the fact of conviction and statutory offense in order to determine whether a prior conviction "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another," we must decide if a sentencing court may examine the charging paper *alone* when the jury instructions are unavailable.

In interpreting the *Taylor* refinement of the strict categorical approach, our cases

---

**3.** In dictum in *Sweeten*, we also looked beyond the statute and fact of conviction to conclude that a conviction satisfied the "violent felony" definition in section 924(e)(2)(B)(i), reaching offenses

with force as a specific element. Nonetheless, we have never actually applied the "modified categorical approach" to cases other than those involving the "burglary" provision of the statute.

have not pedantically enforced the literal language of the Court's holding, insisting unrealistically that the government produce jury instructions for every case. For example, we cannot expect the government to produce what never existed. We have, therefore, held that the sentencing court may refer to the charging paper and judgment of conviction, or to the charging paper and signed plea, when the conviction in question was by guilty plea. *See O'Neal,* 937 F.2d at 1373; *Sweeten,* 933 F.2d at 769, 772. On the other hand, our guilty plea cases did not write the Court's reference to instructions entirely out of the *Taylor* refinement. In *O'Neal,* we specifically stated, "[i]n the case of a jury trial, of course, the sentencing court is also to consider the jury instructions." 937 F.2d at 1373 n. 5.

Nonetheless, even with regard to jury convictions, we have exhibited some tolerance for government failure to produce the instructions. We have recognized that the Court's main concern in *Taylor* was ensuring that the jury actually found all the requisite facts to render the offense a "violent felony." Reference to the instructions verifies that the proof at trial—and the facts found by the jury—established the truthfulness of all of the allegations in the information or indictment that are necessary to classifying the offense as a "violent felony." Where another document unequivocally demonstrates that the jury's findings satisfied this requirement, we have overlooked the absence of jury instructions. Thus, in *Alvarez,* we held that reference to the charging paper and verdict form alone, where the charging instrument included allegations of the elements of generic "burglary" and the verdict stated that the jury found the defendant guilty "as charged in the Information," sufficed to establish that the conviction constituted "burglary" for purposes of section 924(e). 972 F.2d at 1005–06.

Before the district court and in its briefing on appeal, the government argued that the sentencing court could rely on the information *alone* to determine that Parker's 1968 conviction was for a "violent felony." Only at oral argument, in reliance on *Alvarez,* which it had not cited in its briefs, did the government attempt to rely on the 1968 verdict form. However, that form provides *no* information regarding the facts found by the jury; it simply recites that the jury finds Parker guilty of violating Cal.Penal Code § 459. The verdict in Parker's 1968 conviction is thus a useless reference; it provides nothing to supplement the materials generally employed under the strict *Sherbondy* categorical approach—the statutory definition and fact of conviction. In effect, despite its belated adoption of the verdict form as further support, the government is dependent upon a single document, the charging paper, to show that Parker's 1968 conviction qualifies as a "violent felony" under the *Taylor*-modified categorical approach.

■ We hold that the sentencing court may not rely upon the charging paper *alone* in determining if a prior jury conviction was for a "violent felony." We further hold that the court may not rely solely upon the charging instrument and verdict form if the latter fails to reflect the actual facts found by the jury in convicting the defendant. Without a verdict form verifying the jury's findings of the truthfulness of all of the requisite charging allegations, the instructions are indispensable. In their absence, there can be no assurance that the facts that the government argues establish a "violent felony" were actually found by the jury. That was the evident purpose of the Court's reference to instructions; reliance on the charging paper alone, even when coupled with a non-corroborative verdict form, does not conform to the Court's decision in *Taylor*.[4]

Ultimately, whatever rule were adopted, someone—either criminal defendants or the government—would benefit from the loss or destruction of jury instructions. Under the rule that *Taylor* compels, some convictions

---

4. The Court's reference to jury instructions also suggests that it would not approve of a sentencing court's reliance upon the charging paper coupled with a legal conclusion about the state's law on variance of proof. Allowing such a legal determination to substitute for jury instructions or a verdict form verifying what the jury *actually* found in convicting the defendant courts a very serious risk of federal sentencing proceedings devolving into extended argument over state-law material variance issues.

that would have counted as "violent felonies" had the instructions been preserved will not so count after their destruction. Under the rule urged by the government, some convictions would count as "violent felonies" that would not have been so categorized were the instructions available. Because we can assume that the problem of lost or destroyed instructions will affect primarily older convictions rather than recent ones, the rule we adopt is consistent with the general sentencing principle that the passage of time should dilute—and not magnify—the effect of past conduct on punishment for present acts. *Cf.* U.S.S.G. § 4A1.2(e) (time limitations in calculating criminal history). Although Congress enacted no time limits for the armed career criminal enhancement provision, this general equitable sentencing principle supports our adoption of the rule that lessens the impact of a conviction over time rather than aggravates it.

### III

■ Where jury instructions have been destroyed or lost, and the verdict form does not confirm the requisite factual findings, the court must rely upon the strict *Sherbondy* categorical approach—looking to the fact of conviction and statutory definition of the offense only—in deciding if a conviction satisfies section 924(e)(2)(B). Here, the statutory definition of Parker's 1968 offense does not qualify as a "violent felony," there are no jury instructions available, and the verdict form shows only that the defendant was guilty of an offense covered by the statute. Accordingly, the district court correctly declined to sentence Parker as an armed career criminal.

**AFFIRMED.**