Chung Ping LI, Petitioner,

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–72597.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 2004.

Filed Nov. 19, 2004.

Zachary Nightingale, Megan Fersten-feld–Torres, Van Der Hout, Brigagliano and Nightingale, LLP, San Francisco, CA, for the petitioner.

Jennifer Paisner, U.S. Department of Justice, Office of Immigration Litigation, Civil Division, Washington, D.C., for the respondent.

Before: WALLACE, KOZINSKI, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

We must decide whether an alien defendant is removable for conviction of an offense that "involves fraud or deceit in

which the loss to the victim or victims exceeds $10,000," 8 U.S.C. § 1101(a)(43)(M)(i), even though monetary loss is not an element of the crimes of which he was convicted. Applying the "modified categorical approach," we hold that the requisite amount of loss is not demonstrated unequivocally by the charging document and the judgment of conviction. Therefore, we must grant the petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Chung Ping Li is a citizen of Taiwan who was admitted to the United States in 1987 as a legal permanent resident. In 1995, he was convicted, after a jury trial, of eight fraud-related federal offenses under 18 U.S.C. §§ 2,[1] 287,[2] 371,[3] and 1001.[4] Following his conviction, Petitioner was sentenced to twenty-four months in prison. After his release he was served with a Notice to Appear and placed in removal proceedings by the Immigration and Naturalization Service (INS).[5]

The INS argued to the immigration judge (IJ) that Petitioner is removable as an alien who was convicted of an "aggravated felony." *See* 8 U.S.C. § 1227(a)(2)(A)(iii). The INS specified three types of "aggravated felon[ies]": "a theft offense ... for which the term of imprisonment[is] at least one year," *id.* § 1101(a)(43)(G); an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," *id.* § 1101(a)(43)(M)(i); and "an attempt or conspiracy to commit" one of those two offenses, *id.* § 1101(a)(43)(U).

The IJ agreed with the INS with respect to subsections (M) and (U) and did not rule on the argument under subsection

---

**1.** (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
*Id.* § 2.

**2.** Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.
*Id.* § 287.

**3.** If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

*Id.* § 371.

**4.** Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
shall be fined under this title or imprisoned not more than 5 years, or both.
*Id.* § 1001(a).

**5.** The INS ceased to exist on March 1, 2003, when its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135. However, we refer to the agency as the INS here because the proceedings in this case took place before the transfer.

(G). In finding that the loss to the victim exceeded $10,000, the IJ relied on the superseding information and the judgment of conviction. The superseding information charged Petitioner and his associates with manipulating and falsifying data that they generated under contract with various federal agencies and with submitting invoices in which they sought payment for the improperly obtained data; counts 3, 6, and 8 of the superseding information each described invoices seeking payment totaling more than $10,000. The judgment of conviction, in turn, states that Petitioner "was found guilty of Counts one—eight of the Superseding [Information]." Relying on these documents, the IJ ordered Petitioner's removal.

Petitioner timely appealed to the Board of Immigration Appeals (BIA).[6] The BIA affirmed the IJ's decision and ordered Petitioner's removal. The BIA reasoned that the jury had found Petitioner guilty of counts 1 through 8 of the superseding information and that counts 3, 6, and 8 referred to falsely claimed amounts of more than $10,000. Therefore, the BIA concluded, Petitioner must have been convicted of an offense resulting in a loss of more than $10,000 to the victim. This timely petition for review followed.

## JURISDICTION AND STANDARD OF REVIEW

We lack jurisdiction to review a final order of removal against an alien who has committed an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). Nonetheless we retain jurisdiction to decide whether we have jurisdiction. *Luu–Le v. INS*, 224

F.3d 911, 914 (9th Cir.2000). Here, because we must determine whether Petitioner committed an aggravated felony, the jurisdictional inquiry requires an examination of the merits. *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir.2000).

We review de novo whether a particular conviction is an aggravated felony. *Luu–Le*, 224 F.3d at 914.

## DISCUSSION

To determine whether Petitioner was convicted of an aggravated felony and is therefore removable under 8 U.S.C. § 1227(a)(2)(A)(iii), we employ the analysis set forth in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *Tokatly v. Ashcroft*, 371 F.3d 613, 621–22 & n. 8 (9th Cir.2004). The essence of the *Taylor* approach is that the sentencing court may not look beyond the record of the prior conviction to the facts underlying it. *Tokatly*, 371 F.3d at 620.

We first make a categorical comparison between the generic crime—here, an "aggravated felony," defined as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," 8 U.S.C. § 1101(a)(43)(M)(i)—and the elements of each particular offense of which Petitioner was convicted. *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir.2002). If the statutory crime of conviction is broader than the generic crime (that is, if Petitioner could have been convicted under the statute for conduct that would not satisfy the generic

---

**6.** The INS did not cross-appeal to the BIA, and the BIA concluded that the question whether Petitioner had committed a theft offense for which the term of imprisonment is at least a year, 8 U.S.C. § 1101(a)(43)(G), was "not on appeal." The INS does not seek our review of the BIA's conclusion. Indeed, "the

INS is deemed to have abandoned any arguments not raised in its appeal to the BIA." *Alvarez–Santos v. INS*, 332 F.3d 1245, 1253 (9th Cir.2003) (citing *In re Medrano*, 20 I. & N. Dec. 216, 218–20, 1990 WL 385765 (B.I.A. 1991)). Therefore, the potential application of subsection (G) is not before us.

crime) then we must move to the "modified categorical approach":

> Under the modified categorical approach, we conduct a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive.

*Id.* "The idea of the modified categorical approach is to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime...." *United States v. Corona–Sanchez,* 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc). To satisfy the modified categorical approach in the case of a jury conviction, the record of conviction must establish that the " 'jury was actually required to find all the elements' of the generic crime." *Id.* (quoting *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143).[7]

Petitioner is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for conviction of an aggravated felony if, under the two-step categorical approach, we find that he was convicted of an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," *id.* § 1101(a)(43)(M)(i), or of an attempt or conspiracy to commit the same, *id.* § 1101(a)(43)(U).

## A. *The Categorical Approach.*

The parties agree that Petitioner's convictions do not satisfy the strict categorical approach, in which we may "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143. The relevant definition of an aggravated felony "has two elements: (1) the offense must involve fraud or deceit, and (2) the offense must also have resulted in a loss to the victim or victims of more than $10,000."[8] *Chang,* 307 F.3d at 1189. By contrast, the statutes under which Petitioner was convicted do not require proof of a monetary loss. *See, e.g., United States v. Caldwell,* 989 F.2d 1056, 1059 (9th Cir.1993) ("To convict someone under 18 U.S.C. § 371 the government need only show (1) he entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy."); *United States v. Causey,* 835 F.2d 1289, 1292 (9th Cir.1987) ("[T]he elements of the offense created by 18 U.S.C. § 287 are (1) presenting a claim against the United States, and (2) knowing such claim to be false.")[9]; *United States v. Medina*

---

7. Many more of our published decisions involve the application of the modified categorical approach to prior convictions by guilty plea than by jury trial or bench trial. In the case of a guilty plea, the record must "unequivocally establish[ ]" that the defendant pleaded guilty to all the elements of the generic offense. *See Corona–Sanchez,* 291 F.3d at 1211.

8. Potential or intended loss can satisfy the second element under 8 U.S.C. § 1101(a)(43)(U), which defines an aggravated felony as "an attempt or conspiracy to commit" another aggravated felony defined in § 1101(a)(43). *See In re Onyido,* 22 I. & N. Dec. 552, 1999 WL 126436 (B.I.A.1999) (con-

cluding that submission of a false insurance claim qualified as an aggravated felony under § 1101(a)(43)(U), even though the petitioner's scheme was unsuccessful and he received no payment from the insurance company).

9. A "claim" under 18 U.S.C. § 287 must involve "a demand for money or transfer of public property or an attempt to cause the government to pay out sums of money," *United States v. Jackson,* 845 F.2d 880, 883 (9th Cir.1988) (internal quotation marks omitted), but there is "no requirement that the claim has actually been honored," *United States v. Coachman,* 727 F.2d 1293, 1302 (D.C.Cir. 1984). Thus, although actual loss is not required, a conviction under § 287 always in-

*De Perez*, 799 F.2d 540, 542 (9th Cir.1986) (18 U.S.C. § 1001 prohibits "not only those false statements that might cause pecuniary or property loss to the government, but also statements and deceptive practices that prevent[ ] government agencies from carrying out administrative or regulatory directives"). Therefore, we must move to the modified categorical approach.

## B. The Modified Categorical Approach.

The modified categorical approach permits courts to go beyond the mere fact of conviction "in a narrow range of cases where a jury was actually required to find all the elements" of the generic offense. *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143. The Court in *Taylor* gave one example of when a prior conviction would satisfy the modified categorical approach: a case in which a state's burglary statute "include[s] entry of an automobile as well as a building," but "the indictment or information and jury instructions" show that the jury "necessarily had to find an entry of a building to convict." *Id.* As we said in *United States v. Parker*, 5 F.3d 1322, 1327 (9th Cir.1993), "[w]e have recognized that the Court's main concern in *Taylor* was ensuring that the jury actually found all the requisite facts to render the offense a 'violent felony.'" Thus, if the record of conviction demonstrates that the jury in Petitioner's case actually found that Petitioner caused, or intended to cause, a loss to the government of more than $10,000, the modified categorical approach will be satisfied.

In *Parker*, we discussed the types of documents that might demonstrate unequivocally that a jury had found all the requisite charging allegations to be true. We interpreted the *Taylor* Court's reference to jury instructions, in the example

described above, as a requirement that the sentencing court verify that the jury actually made the findings necessary to satisfy the elements of the generic crime. *See Parker*, 5 F.3d at 1327. However, we recognized that the charging paper and the jury's verdict form, like jury instructions, could demonstrate unequivocally that the jury had found the requisite elements, as we had held previously in *United States v. Alvarez*, 972 F.2d 1000 (9th Cir. 1992) (per curiam). *Parker*, 5 F.3d at 1327. In *Alvarez*, we held that the modified categorical approach was satisfied by an information that alleged the requisite elements of the generic crime and a jury's verdict form stating that it found the defendant guilty "'as charged in the Information.'" *Alvarez*, 972 F.2d at 1005–06 (emphasis omitted). In *Parker*, however, the jury's verdict form "provide[d] *no* information regarding the facts found by the jury" and recited only that the jury had found the defendant guilty of violating the statute. 5 F.3d at 1327. We concluded:

> Without a verdict form verifying the jury's findings of the truthfulness of all of the requisite charging allegations, the instructions are indispensable. In their absence, there can be no assurance that the facts that the government argues establish [the generic crime] were actually found by the jury.

*Id.*

## C. The Record of Conviction.

■ As proof that Petitioner was convicted of an aggravated felony, the INS offered a record of conviction consisting of the superseding information and the judgment. The superseding information contains allegations that would satisfy the definition of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i) and (U). For

---

volves intended loss to the government. Nevertheless, § 287 is not a categorical match

because no particular *amount* of intended loss is required.

example, count 8 charges that Petitioner and his associates submitted to the federal government two invoices for payments totaling nearly $250,000 to which they knew they were not entitled under their contract. The judgment recites: "THE DEFENDANT: was found guilty of Counts one-eight of the Superseding[Information]. Accordingly, the defendant is adjudged guilty of such count(s). . . ."

The INS argues that those statements in the judgment unequivocally establish that the jury found Petitioner guilty of the facts alleged in the charging document and that this case therefore is controlled by *Alvarez*. We disagree. In our view, the INS is asking us to extend *Alvarez* by applying its logic not to a jury's verdict form, but to a judgment that is prepared later by the court and that does not contain the critical phrase "*as charged in the Information.*" *Alvarez*, 972 F.2d at 1005. This distinction is dispositive, particularly when we consider *Parker's* statement that "[w]ithout a verdict form verifying the jury's findings of the truthfulness of all of the requisite charging allegations, the instructions are indispensable." 5 F.3d at 1327. Our later cases have cited our conclusion in *Parker* that the verdict form must confirm the requisite factual findings when the jury instructions are absent. *See, e.g., United States v. Fish,* 368 F.3d 1200, 1203 n. 2 (9th Cir.2004); *United States v. Franklin,* 235 F.3d 1165, 1170 n. 5 (9th Cir.2000).

We are especially reluctant to rely solely on the charging document and the judgment to establish a fact that the government was not required to prove, and the jury was not required to find, to convict Petitioner. Amount of loss is not an element of the underlying crimes of conviction, as we have pointed out, and we have in the record no jury instructions, verdict form, or other comparable document suggesting that the jury actually was called on to decide, for example, that Petitioner's false claims were for a particular amount. Although it is tempting to presume that the false claims for which the jury convicted Petitioner were those alleged in the superseding information—count 8 described one invoice for $134,199.42 and another for $113,133.53—we do not know for sure that the prosecutor introduced the invoices or that the indictment's description of the invoices was accurate[10] or that the entire amount of the invoices was fraudulent.

By looking at the sentence imposed under the Guidelines, we can tell that the sentencing judge did find by a preponderance of the evidence that Petitioner and his associates were responsible for losses amounting to much more than $10,000. That finding does not satisfy the categorical approach, however, because it does not satisfy the requirement that the defendant have been *convicted* of each element of the generic crime. *See Chang,* 307 F.3d at 1189. We express no opinion as to whether a sentencing fact found beyond a reasonable doubt by either a jury or a judge would qualify as a "conviction" of that fact. We likewise express no opinion as to whether a defendant's admission of a specific sentencing fact would suffice. Neither condition is present here.

**10.** The permitted variance between the indictment and the proof presented at trial is, of course, limited by the defendant's Fifth Amendment right to be indicted by a grand jury. *See Stirone v. United States,* 361 U.S. 212, 217–18, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). However, we continue to believe, as we stated in *Parker,* that we would contradict *Taylor's* emphasis on uniformity if we were to substitute legal determinations about the extent of permitted variance, under diverse state and federal doctrines, for the categorical analysis. *Parker,* 5 F.3d at 1327 n. 4.

For these reasons, we hold that the superseding information and the judgment in this record do not demonstrate unequivocally that the jury found the amount of loss arising from Petitioner's fraud to be greater than $10,000. Therefore, we cannot conclude that the modified categorical approach is satisfied.

PETITION GRANTED.

KOZINSKI, Circuit Judge, concurring:

1. Any modified categorical approach analysis must start with *Taylor v. United States,* 495 U.S. 575, 599–602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Where the substantive statutes under which the defendant was convicted (here, 18 U.S.C. §§ 287, 371 and 1001) are broader than the generic statute (here, an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(M)(i)), we may "go beyond the mere fact of conviction in a narrow range of cases where a jury was *actually required to find* all the elements of" the generic crime. 495 U.S. at 602, 110 S.Ct. 2143 (emphasis added). To be convicted of a specific offense is to be convicted of the generic offense "if either its statutory definition substantially corresponds to [the generic offense], or the charging paper and jury instructions *actually required the jury to find* all the elements of [the generic offense] in order to convict the defendant." *Id.* (emphasis added).

But this approach only works when the difference between the crime of conviction and the generic crime lies in the fact that particular elements in the former are broader than their counterparts in the latter. By contrast, when the crime of conviction is broader because it is missing an element of the generic crime altogether, we can never find that "a jury was actually required to find all the elements of" the generic crime.

To illustrate the first kind of "broader," suppose the generic crime requires that defendant have used a gun, while the crime of conviction can be committed with any kind of weapon. The government may then use the indictment and other documents in the record to prove that, because the jury convicted the defendant, it must have done so by finding that he used a gun—for instance, if that was the only way that element of the offense was charged in the indictment. *Cf. id.* (example of a state burglary statute including "entry of an automobile as well as a building").

In our case, the crime of conviction is the second kind of "broader." It simply lacks an element of the generic crime—as when the generic crime requires use of a gun while the crime of conviction doesn't require a weapon at all. In such circumstances, the crime of conviction can never be narrowed to conform to the generic crime for the simple reason that the jury is not *required*—as *Taylor* mandates—to find all the elements of the generic crime. It's true that some of the counts against petitioner alleged losses greater than $10,000, but since the crimes with which petitioner was charged did not make the amount of loss an element of the crime, the jury had no need to pass on the issue.

The modified categorical approach thus can't be used to conform petitioner's crime of conviction to the generic statute. Under the *Taylor* approach, the BIA improperly determined he was convicted of an aggravated felony.

2. This is the simple rule I would use to resolve the case if all I had before me were *Taylor.* But we are bound not only by Supreme Court precedent but also by our own.

In *United States v. Alvarez,* 972 F.2d 1000 (9th Cir.1992) (per curiam), decided about two years after *Taylor,* we held that a conviction under Cal.Penal Code § 459

qualified as a generic burglary conviction even though generic burglary, as defined by the Supreme Court in *Taylor*, 495 U.S. at 598–99, 110 S.Ct. 2143, requires unlawful entry and the California statute does not. We did so because the information charged that Alvarez "did *unlawfully enter a building with intent to commit theft*," and the jury found Alvarez "Guilty of the crime of Burglary, in violation of Penal Code section 459, *as charged in the Information*." 972 F.2d at 1005.

*Alvarez*, which came down before we understood the full implications of *Taylor*, was inconsistent with the Supreme Court's opinion. I am not convinced that finding someone guilty "as charged in the Information" is the same as finding every fact alleged in the charge, regardless of its relationship to a statutory element of the crime. But even if the jury had found that Alvarez entered a building unlawfully, finding a fact isn't the same as being required to find it—and *Taylor* calls for the latter. *Alvarez* explicitly recognized the Supreme Court's focus on what the jury was required to find, *see id.* ("The Supreme Court in *Taylor* held that ... [an] enhancement was appropriate if the charging paper and jury instructions *required the jury to find* the elements of generic burglary." (emphasis added)), but then inexplicably forgot it, *see id.* ("[T]hese two particular items are not the only ones that can be used to show that burglary *was proven*." (emphasis added)).

Other cases have perpetuated the *Alvarez* error. In *United States v. Parker*, 5 F.3d 1322 (9th Cir.1993), where the same California statute was at issue, we wrote that "the Court's main concern in *Taylor* was ensuring that the jury actually *found* all the requisite facts to render the offense a 'violent felony,'" *id.* at 1327 (emphasis added) (citing *Alvarez*, 972 F.2d at 1005–06), again confusing finding with being required to find. There, the confusion didn't do any harm to the defendant because, unlike in *Alvarez*, the verdict form did not reference the charging allegations but merely "recite[d] that the jury [found] Parker guilty of violating Cal.Penal Code § 459." *Id.* This was insufficient to satisfy the modified categorical approach, we held, for "[w]ithout a verdict form verifying the jury's findings of the truthfulness of all of the requisite charging allegations, the instructions are indispensable." *Id.* The *Alvarezian* heresy also makes its way into our opinion. *See* Maj. op. at 897 ("Thus, if the record of conviction demonstrates that the jury in Petitioner's case *actually found* that Petitioner caused, or intended to cause, a loss to the government of more than $10,000, the modified categorical approach will be satisfied." (emphasis added)). This approach is not only contrary to *Taylor* but also unfair to defendants because it denies them notice and a reasonable opportunity to rebut the charges against them. Since the amount of loss wasn't an element of the charges against Li, he had no reason to believe it would be relevant to his conviction, and thus no reason to cast doubt on the government's evidence as to amount of loss. For all we know, Li might have had overwhelming evidence that any loss suffered by the government was less than $10,000, but presenting it to the jury would have been a waste of time and probably excluded as irrelevant, since amount of loss was not an element of the offense for which he was being tried. We are "especially reluctant to rely solely on the charging document and the judgment to establish a fact that the government was not required to prove, and the jury was not required to find, to convict Petitioner." Maj. op. at 898. We should be equally reluctant to rely on *any* document to establish an element that the jury was not required to find and that

defendant had no chance to rebut or disprove.

Though *Alvarez* took a wrong turn, it does not prevent us from reaching the right result here, just as it didn't in *Parker*. We have no instructions here to show that the jury was required to find the amount of loss, and I agree that *Parker* prevents us from relying on the judgment of conviction: In the first place, the judgment was prepared by the court, not by the jury; and, in the second place, it states only that Li was found guilty of certain counts, which doesn't necessarily mean that all the facts recited in those counts were found to be true. *See* Maj. op. at 897–98.

*Alvarez* has caused, and will continue to cause, mischief. Though its error makes no difference to the outcome in this case, it needs to be overruled by an en banc court. But, because Judge Graber's opinion properly applies the law of the circuit—wrong though it be—and reaches the right result, I *join*.