**Steve Kie CHANG, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 01–35626.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 2002.

Filed Oct. 11, 2002.

---

Frederick P.S. Whang (argued), Whang & Grotz, Seattle, WA, for the petitioner-appellant.

Daniel C. Goldman (argued), United States Department of Justice, Washington, DC. Appearances only by John McKay, United States Attorney, Western District of Washington; Christopher L. Pickrell, Assistant United States Attorney, Seattle, WA, for the respondent-appellee.

Before D.W. NELSON, THOMPSON and PAEZ, Circuit Judges.

## OPINION

D.W. NELSON, Circuit Judge.

Steve Kie Chang pled guilty to one count of bank fraud for passing a bad check. Chang and the government agreed in a written plea agreement that the loss to the victim that resulted from the bank fraud conviction was $605.30. Now the Immigration and Naturalization Service ("INS") argues that it may rely on other evidence in the record to establish that Chang caused a much greater loss to the victim (over $10,000)—a loss that would make Chang removable as an aggravated felon. We reverse and remand to the district court with directions to grant a writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

Chang is a native and citizen of South Korea but has lived in the United States as a legal permanent resident since the age of five. In 1998, and at the age of twenty-eight, Chang was served with a federal indictment charging him with fourteen counts of bank fraud, each count corresponding to a bad check that he allegedly passed, and one count of conspiracy. Chang decided to forgo his right to a trial and instead plead guilty to only one of the fourteen counts of bank fraud.

The deal between Chang and the government was reduced to writing in a plea agreement. The core of the plea agreement is the understanding that Chang would give up his right to a trial and instead plead guilty only to Count Seven of the indictment. Count Seven charged Chang with cashing a $605.30 check that he knew was counterfeit at a Safeway grocery store. The plea agreement emphasized in a separate paragraph the exact loss to the victim for the offense in Count Seven, stating that "[t]he defendant and the United States agree that the offense in Count Seven to which the defendant is pleading guilty involves a loss to the victim of $605.30."

In addition to pleading guilty to Count Seven of the indictment, Chang also agreed to make restitution in excess of the specific loss caused by the check in Count Seven. Paragraph six of the agreement sets forth the stipulation, agreed to by both Chang and the government, that the restitution amount should fall within the

$20,000 to $40,000 range. In exchange for these concessions by Chang, the government voluntarily dismissed the remaining fourteen counts in the indictment.

Chang was eventually sentenced, pursuant to the plea agreement, to eight months in prison. Chang was also ordered to pay restitution (again, in accord with the terms of the plea agreement) in the amount of $32,628.67. This amount included numerous other alleged fraudulent transactions to which Chang did not plead guilty, but for which he did agree to make restitution, in the plea agreement.

The INS, as a result of Chang's conviction in federal district court, initiated removal proceedings against him by serving him with a notice to appear in December of 1999. The INS alleged that he was removable from the United States on the basis of 8 U.S.C. § 1227(a)(2)(A)(iii)(aggravated felony conviction). The particular aggravated felony that the INS claimed Chang committed was "an offense that— involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Following a hearing before an immigration judge ("IJ"), the IJ agreed with the INS's position and ordered Chang removed to South Korea.

On administrative appeal, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision that Chang was removable under § 1101(a)(43)(M). The BIA looked to the plea agreement, criminal judgment, and presentence report ("PSR") to conclude that Chang's conduct related directly to victim losses in excess of $10,000. The BIA therefore concluded on the basis of these "conviction records" that Chang's bank fraud conviction involved a fraudulent scheme that resulted in a loss greater than $10,000 and qualified as an aggravated felony.

Chang appealed the BIA's ruling to this Court, but we subsequently granted the government's motion to dismiss the appeal.

Chang then sought habeas review of his removal order in federal district court, claiming that his removal violated the laws of the United States—in particular, the $10,000 loss requirement of § 1101(a)(43)(M)(i).[1] The district court disagreed. The court held that resort to the plea agreement and PSR was proper and that both documents provided reliable support for the BIA's conclusion that the total loss was above the $10,000 threshold.

## STANDARD OF REVIEW

"The question of whether a conviction under federal law is a deportable offense is reviewed de novo." *Albillo–Figueroa v. INS*, 221 F.3d 1070, 1072 (9th Cir.2000). While the BIA's interpretation of immigration laws is entitled to deference, *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424–25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999), we are not obligated to accept an interpretation that is contrary to the plain and sensible meaning of the statute. *See Beltran–Tirado v. INS*, 213 F.3d 1179, 1185 (9th Cir.2000).

## DISCUSSION

Section 1227(a)(2)(A)(iii) states that an alien may be removed from the United States if he or she has been convicted of an

---

1. The fact that Chang initially appealed the BIA's decision to this Court, and then sought habeas relief when we dismissed the appeal, does not present a jurisdictional issue because Chang's claim is cognizable on habeas as well as on direct appeal. *See Cruz–Aguilera v. INS*, 245 F.3d 1070, 1073 (9th Cir.2001); *Flores–Miramontes v. INS*, 212 F.3d 1133, 1138–40 & nn. 7, 9 (holding that IIRIRA did not change the scope of habeas review under 28 U.S.C. § 2241 and that pre-IIRIRA claims challenging the legality of INS detention were cognizable both on direct review and on habeas).

aggravated felony. The INS contends that Chang is properly removable under that statutory section on the basis of his bank fraud conviction. We find the INS's rationale wanting.

■ In deciding whether an offense qualifies as an aggravated felony, we look to the statute under which the person was convicted and compare its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43). *See Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Our first task is to make a categorical comparison. Under this "categorical approach," an offense qualifies as an aggravated felony "if and only if the 'full range of conduct' covered by [the criminal statute] falls within the meaning of that term." *United States v. Baron–Medina*, 187 F.3d 1144, 1146(9th Cir.1999) (citation omitted). If we find that the statute of conviction is not a categorical match because it criminalizes both conduct that does and does not qualify as an aggravated felony, then we proceed to a "modified categorical approach." *See Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir.2000). Under the modified categorical approach, we conduct a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive. *See United States v. Corona–Sanchez*, 291 F.3d 1201, 1211 (9th Cir.2002) (en banc).

### A. The categorical inquiry

■ The INS can only remove Chang if his conviction was for an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). This particular statutory definition of an aggravated felony therefore has two elements: (1) the offense must involve fraud or deceit, and (2) the offense must also have resulted in a loss to the victim or victims of more than $10,000.

When compared with the above definition of an aggravated felony, Chang's statute of conviction is too broad to be a categorical match. Chang was convicted under the federal bank fraud statute, which provides as follows:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Chang's statute of conviction and the first element of § 1101(a)(43)(M)(i)'s definition are plainly coextensive; § 1344 clearly requires proof of fraud (or an attempt to defraud) just as the aggravated felony definition does. However, the statute of conviction is significantly broader than the second element of the aggravated felony definition. While § 1344 makes it a crime to defraud a financial institution no matter what losses (if any) result, § 1101(a)(43)(M)(i) provides that only a fraudulent offense resulting in more than a $10,000 loss to the victim qualifies as an aggravated felony. Because Chang's statute of conviction therefore proscribes conduct in excess of that covered by § 1101(a)(43)(M)(i), Chang's conviction is not an aggravated felony on its face.

### B. The modified categorical inquiry

Under the modified categorical approach we are permitted to look to certain documents in the record of conviction to deter-

mine whether Chang's bank fraud conviction satisfies the $10,000 loss requirement of § 1101(a)(43)(M)(i). In its decision, the BIA decided that it could look to Chang's plea agreement and PSR in calculating the loss-to-the-victim. The BIA then concluded that Chang's bank fraud conviction satisfied the requisite loss to the victim amount based on his agreement to make restitution in excess of $10,000 and a statement in the PSR indicating that the "amount of loss attributable to Steven Chang" was over $30,000. We hold—contrary to the BIA—that under the modified categorical approach, the plea agreement firmly establishes that Chang's conviction caused a loss to the victim well below the statutory threshold; we also conclude that the BIA erred when it relied on Chang's PSR to establish a different loss to the victim amount.

### 1. The plea agreement

The written plea agreement between Chang and the government prevents the INS from treating Chang's bank fraud conviction as an aggravated felony. The INS must take the plea agreement as the agency finds it, and in this case, paragraph 8b of that agreement explicitly states that "[t]he defendant and the United States agree that the offense in Count 7 to which the defendant is pleading guilty involves a loss to the victim of $605.30." The text of the plea agreement remarkably tracks Congress's choice of words in § 1101(a)(43)(M)(i) and definitively establishes that the only offense of which Chang

was convicted falls about $9,400 shy of qualifying as an aggravated felony.

The INS, however, attempts to avoid the force of paragraph 8b by pointing to Chang's agreement to make restitution in excess of $10,000. We think that this argument misconceives the agreement struck by Chang and the government and disregards the fact that he was convicted of a single count of bank robbery fraud relating to a specific victim.[2] Section 1227(a)(2)(A)(iii) provides for the removal of aliens only if they have been convicted of an aggravated felony, and here, the plea agreement makes clear (1) that Chang has only been convicted of Count Seven, and (2) that regardless of any other provisions in the plea agreement, the loss to the victim from the only count to which Chang pled guilty was $605.30.

To adopt the government's approach would divorce the $10,000 loss requirement from the conviction requirement, see 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that an alien is deportable "who is *convicted* of an aggravated felony" (emphasis added)), because relevant conduct for sentencing purposes need not be admitted, charged in the indictment, or proven to a jury, in order to be used to impose a restitution order or enhanced sentence. See U.S.S.G. § 1B1.3 (defining relevant conduct). *Cf. Chowdhury v. INS*, 249 F.3d 970 (9th Cir. 2001) (holding that even though a criminal scheme may have involved a loss to the victim in excess of $10,000, to establish that the alien was an aggravated felon as a

---

**2.** The term "conviction" is defined in 8 U.S.C. § 1101(a)(48)(A):

The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Here the district court entered a formal judgment of guilt on Count Seven and dismissed the remaining counts upon entry of Chang's guilty plea. Thus, the alternative definition of conviction in § 1101(a)(48)(A) does not apply to Chang's case.

result of his money laundering conviction, the INS must establish that the predicate *conviction* met the standard for an aggravated felon).

The fact that the loss-to-the-victim amount for Chang's conviction is separately and clearly stated in the plea agreement is what makes this case different from a case recently decided by the Tenth Circuit. *See Khalayleh v. INS,* 287 F.3d 978 (10th Cir.2002). In *Khalayleh,* the petitioner pled guilty to Count Two of an indictment alleging four instances of check fraud in violation of 18 U.S.C. § 1344. *Id.* at 979. Count Two charged Khalayleh with passing a bad check in the amount of $9,308. *Id.* Khalayleh argued that the INS could not consider any losses that may have resulted from the other counts of the indictment in arriving at the loss to the victim for purposes of § 1101(a)(43)(M)(i). *Id.* The Tenth Circuit disagreed. The court held that Count Two did not allege a discrete fraud, but rather alleged a scheme to defraud that encompassed a number of checks. *Id.* at 980. The court therefore held that the loss to be measured from the convicted offense (Count Two) was therefore the loss from the entire scheme. *Id.*

Here, although the indictment can be read to allege a scheme as well, the plea agreement narrows the scope of the indictment—in particular, the relevant loss to the victim. In contrast to the court in *Khalayleh,* we need not go looking for the loss to the victim that resulted from Chang's conviction because the plea agreement spells it out for us in black and white: $605.30. Thus, although the plea agreement gave the district court authority to order restitution with respect to all the checks Chang wrote, it also specifically provided the amount to be considered when determining the amount of loss for purposes of the aggravated felony definition.

### 2. The presentence report

■ The BIA also concluded that it could look to Chang's PSR in establishing the loss to the victim for § 1101(a)(43)(M)(i)'s purposes. Even assuming it were clear under our cases that resort to a PSR may be warranted when conducting a modified categorical inquiry, we still believe that resort to the PSR in this case was not appropriate.

We first note that there is noticeable tension in our recent caselaw concerning whether the INS may ever rely on presentence reports to develop the factual basis of a convicted offense. On the one hand, we recently stated in an en banc opinion that "a presentence report reciting the facts of the crime is insufficient evidence to establish that the defendant pled guilty to the elements of the generic definition of a crime when the statute of conviction is broader than the generic definition." *Corona–Sanchez,* 291 F.3d at 1212(citations omitted). On the other hand, a panel decision issued just four days after *Corona–Sanchez* concluded that resort to a PSR was appropriate to determine whether convictions for bribery and subscribing to a false tax return satisfied the $10,000 loss requirement of § 1101(a)(43)(M)(i). *Abreu–Reyes v. INS,* 292 F.3d 1029, 1034 (9th Cir.2002) ("[A]dmitting the evidence of the amount of loss to the victim contained in the presentence report was not fundamentally unfair, and the IJ properly relied on the pre-sentence report to determine Abreu–Reyes's removability."). We find, though, that we need not resolve this tension here, for no case of ours has held that reliance on a PSR, in the circumstances that the BIA has countenanced here, is permissible.

Even if we believed it generally appropriate to satisfy the elements of an aggravated felony definition with information concerning non-convicted offenses in a PSR, it would still be improper to rely on

statements in Chang's PSR that contradict the explicit language in his plea agreement. *Abreu–Reyes* concluded that the INS may rely on a PSR to determine the loss to the victim when other evidence in the record, i.e., the judgment of conviction, does not provide a loss figure. *Id.* at 1030–31. Here, the plea agreement does clearly provide a loss-to-the-victim amount. Allowing an IJ or the INS to rely on statements or facts in a PSR that relate to dismissed counts to trump the loss amount agreed to by both an alien defendant and the government in a plea agreement would surely lead to sandbagging of many non-citizen criminal defendants.[3] In light of the explicit terms of the plea agreement regarding the amount of loss to the victim of Count Seven we conclude that the BIA incorrectly relied on information dealing with unconvicted offenses in Chang's PSR to establish that his bank fraud conviction satisfied the elements of § 1101(a)(43)(M)(i)'s aggravated felony definition.

### CONCLUSION

Chang's removal was ordered in violation of federal law. Chang is not an aggravated felon because he has not been convicted of an offense that resulted in a loss to the victim of more than $10,000. The judgment of the district court is reversed and we remand with directions to grant the writ.

REVERSED and REMANDED.

---

3. Unwitting alien defendants might choose to plead guilty to only a minor charge (one that clearly wouldn't count as an aggravated felony) in a multiple count indictment. However, if statements in a PSR may be used without limitation to establish the elements of an aggravated felony conviction, the INS could later rely on information relating to a more serious charge and effect the defendant's removal even though the defendant would have thought justifiably that his agreement with the government to plead guilty to only a minor charge foreclosed any such efforts by the INS.