In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-4048

JON KNUTSEN,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of a Decision of
the Board of Immigration Appeals.
No. A10-856-897.

ARGUED SEPTEMBER 12, 2005—DECIDED NOVEMBER 22, 2005

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Petitioner Jon Knutsen, a citizen of Norway and a lawful permanent resident of the United States, appeals a decision by the Board of Immigration Appeals (BIA) which affirmed the immigration judge's (IJ) order of removal. The IJ's decision was based on a determination that monetary losses from unconvicted "relevant conduct" could be considered in calculating whether Knutsen had been convicted of a crime of fraud involving losses greater than $10,000, pursuant to Section 237 of the Immigration and Nationality Act (INA). *See* 8 U.S.C. § 1227 (a)(2)(A)(iii) (2000). The IJ primarily relied on the Tenth Circuit's decision in *Khalayleh v. INS*, 287 F.3d 978 (10th Cir. 2002), which held that losses from dismissed

counts in an indictment could be considered, provided those counts were part of the same fraudulent scheme. Because the IJ's decision is contrary to the plain language of the INA, and the IJ misapplied the *Khalayleh* decision, we grant Knutsen's petition for review, vacate the IJ's order of removal, and remand for further proceedings in accordance with this opinion.

## I.  BACKGROUND

In 1957, Knutsen was admitted to the United States as a lawful permanent resident, a status that he has continuously held since that time.[1] On February 19, 1998, a federal grand jury indicted Knutsen on two counts of bank fraud under 18 U.S.C. § 1344. Count One alleged that from January through July 1995, Knutsen executed a scheme to defraud his employer, Firstar Bank, by (1) converting funds from Firstar Bank's petty cash and operating accounts and depositing them into his personal account and (2) depositing a customer's check, which was payable to Firstar Bank, into his personal account. Count One alleged a total $7,350 loss from Knutsen's misappropriation of funds. Count Two alleged that during September 1995 Knutsen orchestrated a check-kiting scheme. He deposited several insufficient-funds checks, drawn on his Firstar personal account, at several non-Firstar ATM's to take advantage of the time delay in processing the checks. This gave him an artificially

---

[1]  In the Notice to Appear, the government alleged that Knutsen was admitted to the United States as an immigrant (SB-1) on or about May 14, 1971. Knutsen contested this date at the initial hearing before the IJ. In his written opinion, the IJ resolved this issue in Knutsen's favor. In any event, there is no dispute that Knutsen has been a long-term resident in the United States, and his specific date of admission is not significant for purposes of this opinion.

inflated balance in his account, causing Firstar to lose $12,930.96.

On September 3, 1998, Knutsen entered into a written plea agreement in which he pled guilty to Count One. The government, in turn, agreed to dismiss Count Two. Knutsen also stipulated that the facts alleged in Count Two constituted "relevant conduct within the meaning of [Sentencing] Guideline § 1B1.3." For the purpose of adjustments under the Sentencing Guidelines, he acknowledged that the "total loss from the offense of conviction and relevant conduct exceeded $20,000."

On September 3, 1998, the district court judge, after dismissing Count Two, consistent with the plea agreement, sentenced Knutsen to five months' imprisonment, with a recommendation for home confinement, and three years supervised release. In the judgment order, under the section entitled "Guideline Range Determined by the Court," the district court judge entered a total amount of restitution of $22,480, although he did not order actual payment of restitution.[2]

On November 23, 1999, the government moved for Knutsen's removal due to his bank fraud conviction, claiming that since Knutsen had been convicted of an aggravated felony relating to fraud or deceit in which the loss to the victims exceeded $10,000, he was subject to removal under 8 U.S.C. § 1227 (Section 237 of the INA).

Following several hearings, the IJ issued a written opinion in which he concluded that Knutsen's conviction constituted an aggravated felony under the INA. As a result, the IJ ordered that Knutsen be removed from the

---

[2] As the government points out, the district court judge likely did not require payment of restitution because Knutsen had already provided full restitution before entry of the judgment.

United States to Norway. The BIA affirmed the IJ's decision, without opinion, and Knutsen now appeals.

## II.  ANALYSIS

### A.  Jurisdiction and Standard of Review

Our jurisdiction in this case is limited by the INA, which precludes judicial review of any final order of removal against an alien who is removable by reason of having committed an aggravated felony. 8 U.S.C. §§ 1252 (a)(2)(C), 1227 (a)(2)(A)(iii) (2000). This jurisdiction-stripping provision, however, does not limit judicial review of "questions of law raised upon a petition for review." 8 U.S.C. § 1252 (a)(2)(D); *see also Gattem v. Gonzales,* 412 F.3d 758, 762-63 (7th Cir. 2005) (noting that the recent REAL ID Act of 2005 provides the court with jurisdiction to review questions of law). Furthermore, this Court retains the authority to assess its own jurisdiction: "[w]hen judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists." *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir. 1997). Consequently, we have jurisdiction to determine whether Knutsen has been convicted of an offense involving fraud or deceit, with losses greater than $10,000. *Id.*; *see also Lara-Ruiz v. INS*, 241 F.3d 934, 938-39 (7th Cir. 2001).

We review this question of law *de novo*, but will defer to the agency's interpretation of the INA if the intent of Congress is unclear on a particular issue and the agency's interpretation is reasonable. *Borca v. INS*, 77 F.3d 210, 214 (7th Cir. 1996). If, however, the intent of Congress is clear, both this Court and the agency must give effect to that legislative intent. *Chevron U.S.A., Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 842-43 (1984). Where the BIA affirms without opinion, we directly review the decision of the IJ. *Hysi v. Gonzales,* 411 F.3d 847, 852 (7th Cir. 2005).

**B.  The Indictment Did Not Allege a Single Fraudulent Scheme that Encompassed the Acts Alleged in Counts One and Two.**

Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227 (a)(2)(A)(iii). An "aggravated felony" includes any "offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101 (a)(43)(M)(i) (2000). Knutsen does not dispute that he was convicted of an offense involving "fraud or deceit." Instead, his sole argument is that his offense of conviction is not an aggravated felony under the INA because he pled guilty solely to Count One, which involved a $7,350 loss, which was below the $10,000 threshold. Knutsen argues that the additional $12,000-plus in losses stemming from Count Two cannot be added to the losses from Count One because he was not convicted of any of the fraudulent acts alleged in Count Two, as the government dismissed Count Two as part of Knutsen's plea bargain.

Knutsen's argument is supported by the plain and unambiguous language of the statute, which predicates removal on a *convicted* offense resulting in losses greater than $10,000. 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101 (a)(43)(M)(I); *see also Khalayleh,* 287 F.3d at 980 (finding the operative language of the pertinent INA provisions unambiguous). This plain language forecloses inclusion of losses stemming from unconvicted offenses, and, as we explain below, should have terminated Knutsen's removal proceeding at the very outset.

The IJ, however, did not stop with the statutory language. Instead, after correctly determining that this circuit had not yet addressed whether unconvicted fraudulent conduct can be used in the calculation of loss amounts under the pertinent provisions of the INA, the IJ turned to the Tenth Circuit's decision in *Khalayleh v. INS*, 287 F.3d 978 (10th

Cir. 2002), as well as the Ninth Circuit's decision in *Chang v. INS*, 307 F.3d 1185 (9th Cir. 2002). Although both these cases are instructive, neither supports the IJ's decision here. To the contrary, a precise reading of these cases compels the opposite result.

In *Khalayleh*, a resident-alien petitioner was charged with bank fraud based on a check-kiting scheme, in which the petitioner knowingly wrote several insufficient-funds checks drawn on various accounts at several banks. *Khalayleh,* 287 F.3d at 979. The indictment had four counts, with each count representing a different fraudulent check. *Id.* Thus, the separate counts were essentially mirror images of one another, and merely segmented the component acts of a larger fraudulent scheme. The petitioner pled guilty to a single count, which carried a loss of $9,308, although he agreed to provide total restitution in the amount of $24,324.03. *Id.* When the government sought removal under the INA, the petitioner argued that he fell outside of the INA provisions for an "aggravated felony" because his offense of conviction involved a loss under $10,000. *Id.* at 979-80. The Tenth Circuit disagreed, and held that there was "no ambiguity regarding the scope of the offense to which Petitioner pleaded." *Id.* at 980. Rather, the indictment alleged a single scheme to defraud that encompassed "a number of checks," and, therefore, the "offense of conviction" was the entire scheme. *Id.* As a result, the Tenth Circuit concluded that the proper total loss calculation should have included losses from all four counts. *Id.*

In the IJ's view, the *Khalayleh* case determined the outcome here. *Khalayleh*, however, is readily distinguishable. Specifically, the Tenth Circuit's decision depended entirely on an integral fact that is missing here: namely, an overarching fraudulent scheme that encompassed the individual counts in the indictment. Indeed, the Tenth Circuit fully recognized the importance of connecting all the

counts in the indictment under a single scheme, and noted that had the counts in the indictment recited discrete and separate frauds the result would have been different:

> [Defendant] reads the indictment as if each count alleged a discrete fraud involving a single check. If that were how the indictment had been written, his contention might have merit. In that circumstance, even if a plea agreement gave the district court authority to order restitution with respect to all four checks in the indictment, perhaps only the check in the count to which the defendant pleaded could properly be considered in determining the amount of loss for purposes of the definition of aggravated felony.

*Khalayleh,* 287 F.3d at 980 (citations omitted). Thus, rather than divorcing the INA's loss requirement from the conviction requirement, the *Khalayleh* court did precisely the opposite: it affirmed the statutory prerequisite of a conviction by determining the nature of the convicted offense and which losses could be connected to this convicted offense. Rather than narrowly focusing on this crucial predicate determination of a single fraudulent scheme, the IJ instead appears to have focused on the Tenth Circuit's passing acknowledgment that the petitioner agreed to pay the amount of "actual loss," which was greater than $10,000. Noting that Knutsen had similarly stipulated that the total loss from his conduct was greater than $10,000, the IJ then determined that this greater amount controlled. This analysis, however, is inverted because it relies on a purported loss amount to determine the offense of conviction. The proper analytic framework requires an initial, precise determination of the offense of conviction. It is only after this initial determination that loss amounts can be calculated.

Even if we agreed with the Tenth Circuit's analysis that the calculation of a total loss amount under Section 237

of the INA could include losses from unconvicted counts that are encompassed by an overall fraudulent scheme, the IJ's decision could not stand because Knutsen's indictment here lacks *any* allegation of a single overarching scheme. To the contrary, each count in the indictment pertains to a separate and distinct fraudulent scheme involving different time periods and different types of fraudulent acts. For instance, Count One addressed acts occurring from January to early-July 1995, whereas Count Two addressed acts occurring only during September 1995. More importantly, the conduct alleged in each count is substantively different. Count One alleged that Knutsen stole directly from Firstar's petty cash and/or operating accounts, and misappropriated a customer's check. Therefore, these acts depended on Knutsen's role as an employee of the bank and his position of trust. In contrast, Count Two alleged a check-kiting scheme in which Knutsen wrote a variety of overdrawn checks to several personal checking accounts. Not only are these acts of a different nature than the acts alleged in Count One, but they also depended on Knutsen's role as a customer of Firstar, rather than as an employee.[3]

In addition to the plain language in the indictment, case law in this circuit confirms that Counts One and Two cannot be read as component parts of a single fraudulent scheme. For instance, in examining whether multiple crimes are part of "a common scheme or plan" for purposes of sentencing, this Court has held that "crimes are part of a single common scheme or plan *only* if: (1) they were jointly planned; or (2) one crime entails the commission of the other." *United States v. Brown*, 209 F.3d 1020, 1023 (7th Cir. 2000) (citations omitted). "The test is one of singularity,

---

[3] Although Knutsen, of course, may have relied on insider information gleaned from his employment at the bank to capitalize on his check-kiting scheme, the indictment is silent on this issue.

not similarity." *United States v. Joy,* 192 F.3d 761, 771 (7th Cir. 1999).

Here, the government argues that the acts in Counts One and Two are part of a common scheme because, aside from involving the same victim, they involved an "obvious common purpose—to obtain money for petitioner's own ends." But this fact is not enough to constitute a single fraudulent scheme because virtually every monetary fraud involves obtaining money for one's "own ends." Moreover, unity of victims, by itself, does not create a common scheme, particularly when the indictment is devoid of *any* allegation of a unitary fraudulent scheme tying together the charges. So, unlike the circumstances in *Khalayleh*, it cannot be said that Knutsen's plea to Count One's charges was tantamount to a plea to the separate scheme alleged in Count Two.

The Ninth Circuit's decision in *Chang* is instructive, but does not support the government's position. *Chang v. INS*, 307 F.3d 1185. In *Chang,* a resident-alien petitioner was charged with fourteen counts of bank fraud. *Id.* at 1187-88. Like the indictment in *Khalayleh*, each count corresponded to a single "bad check" written by the petitioner. *Id.* The petitioner pled guilty to a single count. Significantly, the plea agreement explicitly stated that "the defendant and the United States agree that the offense in Count Seven to which the defendant is pleading guilty involves a loss to the victim of $605.30," which the Ninth Circuit noted was "remarkably" similar to the language used by Congress in § 1101(a)(43)(M)(i). *Id.* at 1190. Elsewhere in the plea agreement, however, the petitioner agreed to pay restitution in the range of $20,000 to $40,000. *Id.* at 1188.

After the government moved for removal under the INA, the BIA determined that the petitioner's overall fraudulent conduct resulted in losses greater than $10,000,

as evidenced by his agreement to pay restitution in excess of $20,000.[4] The Ninth Circuit reversed, holding that the plea agreement's specification of a $605 loss-to-victim amount controlled. *See id.* at 1191. Although the Ninth Circuit acknowledged that the indictment at issue in *Chang* could have been read as alleging a single fraudulent scheme, like the one in *Khalalyeh*, it held that the "plea agreement narrows the scope of the indictment," and therefore the loss amount specified in the plea agreement controlled. *Id.*

The government seeks to limit *Chang*'s holding to situations where a plea agreement contains the same type of specific, statute-tracking language pertaining to loss amounts. This is an excessively narrow reading. *Chang* does not stand for the proposition that a plea agreement must contain such talismanic phrases to prohibit inclusion of loss amounts from additional, unconvicted offenses. Rather, the Ninth Circuit simply noted that the clear language in the plea agreement made it *abundantly* clear that the government and the petitioner had explicitly agreed on the governing loss amount. It may be that such a high level of clarity is particularly important in circumstances like *Khalayleh* and *Chang*, where an indictment *could* be read as alleging a single scheme that encompassed all the individual counts. But that is not the case here—the record is devoid of any allegations of a fraudulent scheme uniting Counts One and Two. Moreover, Knutsen's plea agreement is not vague on the pertinent loss amounts: Knutsen unmistakably pled guilty *only* to Count One, and paragraph 5 of the plea agreement plainly documented that loss at $7,350.

*Chang* instead supports the basic and sensible proposition that courts should strive to honor the contractual agree-

---

[4]  The district court in *Chang* ordered over $32,000 in restitution.

ment reached between a defendant and the government. And there are good policy reasons for this. For instance, as the *Chang* court noted, allowing the government to circumvent the plain terms of a plea agreement "would surely lead to sandbagging of many non-citizen criminal defendants." *Id.* at 1192. Indeed, uncertainty on whether the loss amounts specified in a plea agreement will control in subsequent removal proceedings does not benefit either party. Defendants may be less willing to enter into plea agreements in light of the uncertainty of their effect in any future immigration proceedings. As a result, the government may be forced to expend unnecessary time and resources litigating and appealing cases that otherwise could have been resolved through a plea agreement. The better result here, and one consistent with the statute, is that the court should focus narrowly on the loss amounts that are particularly tethered to convicted counts alone.

## C. Knutsen's "Relevant Conduct" Losses Cannot Be Used to Calculate Total Losses Under the INA.

The government also argues that Knutsen's stipulation in his plea agreement pertaining to other "relevant conduct" for sentencing effectively conceded that the total loss amount of his "fraudulent scheme" exceeded $10,000. Setting aside the fact that neither the indictment nor the plea agreement even allege a single "fraudulent scheme," the government is mixing apples and oranges here. In his plea agreement, Knutsen stipulated that the acts alleged in Count Two were "relevant conduct" for purposes of sentencing. He also conceded, again for purposes of sentencing, that the "total loss from the offense of conviction *and relevant conduct* exceeded $20,000." (emphasis added). These stipulations were listed in a separate paragraph from the one in which Knutsen identified the conduct and losses to which he was pleading guilty. Therefore, the plea agree-

ment plainly distinguished between losses related to the "offense of conviction," and those related to "relevant conduct."

This bifurcation of losses between an "offense of conviction" and "relevant conduct" is consistent with the INA's implicit distinction between convicted and unconvicted offenses. *Cf.* 8 U.S.C. § 1227(a)(2)(A)(iii). In addition, the government provides no authority indicating that Congress intended to import "relevant conduct" losses into this statute. Indeed, the authority cited by the parties on this issue suggests the opposite:

> To adopt the government's approach would divorce the $10,000 loss requirement from the conviction requirement because relevant conduct for sentencing purposes need not be admitted, charged in the indictment, or proven to a jury in order to be used to impose a restitution order or an enhanced sentence.

*Chang*, 307 F.3d at 1190 (citations omitted).

As a final note, the government also contends that this Court must accord deference to the IJ's interpretation of the INA. This requirement of deference, however, is limited to where the statute is ambiguous and the agency's interpretation is reasonable. *Borca*, 77 F.3d at 214. As described above, neither condition is met here. *See Khalayleh,* 287 F.3d at 980 (holding that *Chevron* deference to agency interpretation was not required "because there is no ambiguity with respect to the meaning of the statutory language").

## III. CONCLUSION

For the foregoing reasons, we GRANT Knutsen's Petition for Review, VACATE the removal order of the IJ dated

September 23, 2003, and REMAND for proceedings consistent with this opinion.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*