RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NICHOLAS ANTONIO GRAHAM,

                *Petitioner*,

    *v.*

MICHAEL MUKASEY, Attorney General of the United States,

                *Respondent*.

No. 06-4538

---

On Petition for Review of a Final Order
of the Bureau of Immigration Appeals.
No. A78 424 808.

Argued: January 29, 2008

Decided and Filed: February 20, 2008[*]

Before: MERRITT, DAUGHTREY, and MOORE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Brian D. Lerner, LAW OFFICES OF BRIAN D. LERNER, Long Beach, California, for Petitioner. Dimitri N. Rocha, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian D. Lerner, LAW OFFICES OF BRIAN D. LERNER, Long Beach, California, for Petitioner. Surell Brady, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

    MARTHA CRAIG DAUGHTREY, Circuit Judge. Petitioner Nicholas Antonio Graham is a citizen of Jamaica who entered the United States as a visitor, overstayed his visa, and was subsequently convicted in federal court on two counts of conspiracy to commit mail fraud. He now petitions for review of the final administrative order of removal based on his status as an alien convicted of an aggravated felony, under 8 U.S.C. § 1227(a)(2)(A)(iii). Graham contends that the expedited removal procedure to which he was subjected, pursuant to 8 U.S.C. § 1228(b), violated

---

[*] This decision was originally issued as an "unpublished decision" filed on February 20, 2008. On March 20, 2008, the court designated the opinion as one recommended for full-text publication.

both his due process and his equal protection rights.  We find no merit to these contentions and, therefore, deny the petition for review.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Graham is a native and citizen of Jamaica who entered the United States on a temporary visitor's visa in March 1988 and remained in this country without ever obtaining lawful permanent residence.  In July 2004, Graham pleaded guilty in the United States District Court for the Eastern District of New York to two counts of conspiracy to commit mail fraud.  Several other counts were dismissed upon motion of the United States.  In addition to a prison sentence of 41 months, Graham was ordered to pay restitution totaling $878,235, to be distributed among three victims.

While Graham was incarcerated, Immigration and Customs Enforcement placed him in expedited removal proceedings that are applicable to aliens who are not permanent legal residents and who commit certain crimes.  *See* 8 U.S.C. § 1228(b).  On November 8, 2006, Graham was served in person with an official notice of intent to remove based on his conviction for an "aggravated felony," pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  "Aggravated felony" is defined in 8 U.S.C. § 1101(a)(43), in pertinent part, as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Conspiracy to commit such an offense also qualifies as an aggravated felony.  *See* 8 U.S.C. §§ 1101(a)(43)(M)(i), (a)(43)(U).  The notice informed Graham of his procedural rights, including the right to be represented by counsel at his own expense.  It also indicated that Graham had a right to contest removal "with supporting evidence," request an opportunity to review the government's evidence, admit deportability, designate the country to which he would be removed, and apply for withholding of removal on certain grounds listed in the notice.  Finally, the notice informed Graham that any written response had to be received by the Immigration and Naturalization Service within 10 calendar days from the date of personal service on Graham and that, for good cause, Graham could request an extension of time in which to file a response within that same 10-day period.

The notice included a check-off list setting out these options but, instead of selecting one or more of those options, Graham simply refused to sign the notice when it was served on him on November 8, 2006.  A week later, he apparently obtained counsel, who contacted the INS by letter dated November 17, 2006, requesting an extension of time and explaining that he had just been retained and had not yet received copies of the notice or other relevant documents. Counsel also requested an opportunity to review the government's evidence.  The INS received this letter on November 20, 2006, the day Graham's written response was due if sent by mail.  But Graham's attorney had called the INS in the meantime and, although there is some dispute about the content of this conversation, immigration officials were clearly left with the impression that Graham's attorney intended to defend against removal on the ground that Graham's convictions did not qualify as aggravated felonies.  By letter dated November 20, the same day the written request for an extension was received, the INS deportation officer in charge of Graham's case denied the extension, directing counsel to the statutory definition of "aggravated felony" in § 1101(a)(43) and explaining that "[t]he loss to the victims in this case is a matter of public record and is well over ten thousand dollars."   Also on November 20, the INS issued a final administrative removal order.

Graham filed a timely notice of appeal petitioning for review of the removal order, arguing that various aspects of the expedited proceeding violated his due process rights and that the Attorney General's unfettered discretion to place him in either expedited or general removal proceedings violated his right to equal protection.

### *DISCUSSION*

Because the petitioner was ordered to be removed from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) following his conviction for an aggravated felony, we are foreclosed

from review of the final order of removal under 8 U.S.C. § 1252(a)(2)(C), except to the extent that "constitutional claims or questions of law" are raised in a challenge to the final order.  8 U.S.C. § 1252(a)(2)(D).  The government contends that we lack jurisdiction to review the order of removal in this case because Graham did not challenge the order at the agency level.  Alternatively, the government argues that Graham has waived his right to challenge the legal basis of the order of removal by failing to contest the legality of the order before this court.  Beyond those arguments, the government also contends that the constitutional claims have no merit.  We conclude that there is at least some evidence in the record to support the first and second of these contentions and a solid legal basis to support the third.

It is clear, for example, that when given the opportunity to raise a defense to removal when the notice of intent was served personally on the petitioner, Graham not only refused to sign the form but also failed to indicate on the list of options that he had any opposition to removal.  Apparently the only objection raised at the agency level by his attorney concerned Graham's status as an "aggravated felon" under the immigration statute.  In this court, the objection concerns the process by which the petitioner's removal was secured rather than to the validity of the order itself.

As to the procedural due process appeal raised here, it is clear that "[e]ven if an alien enters the United States illegally, he or she 'may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.'" *Warner v. Ashcroft*, 381 F.3d 534, 538 (6th Cir. 2004) (quoting *Shaughnessy v. United States ex. rel. Mezei*, 345 U.S. 206, 212 (1953)).  Graham contends that his expedited deportation violated the traditional standards of fairness guaranteed by the due process clause in various ways, such as: in failing to address the reasons given for his request for an extension before denying it; in failing to allow examination of the government's evidence before issuing the final order; and in failing to provide him with the opportunity to rebut that evidence in a hearing before an immigration judge.  Instead, he contends, there was a "rush to judgment" and his "right to counsel [was] swept under the rug."

However, in order to prevail on a procedural due process challenge, Graham must also show prejudice.  Indeed, we need not address the merits of a claim if there is no demonstration of prejudice.  *See id.* at 539 & n. 1.  Moreover, to establish the requisite prejudice, he must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations.  *See Garza-Moreno v. Gonzales*, 489 F.3d 239, 241-242 (6th Cir. 2007) (alien must show that the absence of the due process violation "would have changed the outcome of the case.").  Here, the only claim of prejudice came very late in the process – in the petitioner's final reply brief in this court, in which he asserted that "the record of conviction does not establish the requisite amount of loss to the victim" of over $10,000 and, therefore, that his convictions do not qualify as aggravated felonies.

This argument is completely unsupported by "the record of conviction."  It is true that the notice of intent served on Graham does not indicate on its face that the losses resulting from his mail fraud offenses totaled more than $10,000.  However, the certified copy of the judgment of conviction entered against him includes an order of restitution to three separate victims that totals $878,235.  Moreover, his reliance on the Ninth Circuit's decision in *Chang v. I.N.S.*, 307 F.3d 1185 (9th Cir. 2002), to support his contention that the mere recitation of the amount of restitution is insufficient to establish losses over $10,000 is wholly misplaced, because Chang's situation is factually distinguishable from Graham's.

In *Chang*, the petitioner had executed an agreement with the government that permitted him to plead guilty to one count of bank fraud in return for the government's dismissal of the remaining 13 counts in the indictment.  *See Chang*, 307 F.3d at 1187-88.  The plea agreement provided that "[t]he defendant and the United States agree that the offense in Count Seven to which the defendant

is pleading guilty involves a loss to the victim of $605.30." *Id.* at 1187. As part of the plea bargain, however, the defendant also agreed to pay restitution in excess of the specific loss caused by the conduct to which he pled guilty, specifically $32,628.67. *See id.* at 1187-88. Thereafter, the INS initiated removal proceedings against Chang, who was a native of South Korea, arguing that he was removable as an alien convicted of an aggravated felony. *See id.* at 1188. The immigration judge and in turn the BIA relied upon facts in his pre-sentence report to find that Chang's conduct caused a loss of over $10,000. *See id.* The Ninth Circuit reversed, holding that to ignore the limiting language in the plea agreement would effectively nullify the requirement in the immigration statute that the $10,000 loss be tied to the alien's conviction. *See id.* at 1191.

In so holding, the *Chang* court distinguished *Khalayleh v. I.N.S.*, 287 F.3d 978 (10th Cir. 2002), a case in which the petitioner had pleaded guilty to one count of passing a bad check in the amount of $9,308, but the INS nonetheless used losses from other bad checks to allege that more than $10,000 in losses had occurred. *See Chang*, 307 F.3d at 1191. The Tenth Circuit affirmed, explaining that the count to which the petitioner had pleaded guilty did not allege a discrete fraud but, rather, a scheme to defraud that encompassed a number of checks and, therefore, that the loss tied to the count of conviction was the loss from the entire scheme. *See Khalayleh*, 287 F.3d at 980. The *Chang* court also explained that it was concerned about the "sandbagging of . . . non-citizen criminal defendants," *i.e.*, that "[u]nwitting alien defendants might choose to plead guilty to only a minor charge (one that clearly wouldn't count as an aggravated felony) . . . [but] the INS could later rely on information relating to a more serious charge and effect the defendant's removal even though the defendant would have thought justifiably that his agreement with the government to plead guilty to only a minor charge foreclosed any such efforts by the INS." *Chang*, 307 F.3d at 1192 & n.3.

Graham has not even alleged, let alone provided documentation, that he was a party to a plea agreement that limited the loss caused by his convictions to less than the restitution amount or that the government is otherwise attempting to "sandbag" him with removal despite a prior agreement to the contrary. Without such limiting language or any other substantiated claim by Graham that the losses to his victims were less than $10,000, we are left to conclude that the restitution ordered in the sentencing order was either specifically tied to the counts of conviction or, as in *Khalayleh*, was the aggregate of loss from a "plan or scheme" alleged in the counts of conviction, both of which charged a conspiracy. *Chang* is not controlling, and we are satisfied that the record establishes losses to Graham's victims well above the $10,000 minimum for purposes of finding that he was convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43). Consequently, Graham has failed to demonstrate the requisite prejudice necessary to sustain his due process claim.

Nor do we find any merit to the petitioner's claim that his right to equal protection was violated by the expedited removal process used in his case. Pursuant to the statutory scheme for removal of non-permanent resident aliens convicted of aggravated felonies, the Attorney General has the discretion to place the alien in expedited proceedings, as Graham was, or in general removal proceedings. *See* 8 U.S.C. § 1228(b) (expedited); 8 U.S.C. § 1229a (general). As the terminology suggests, expedited removal proceedings are conducted more quickly and with less formal procedure than general removal proceedings, and aliens placed in expedited proceedings are not eligible for certain types of discretionary relief available to those placed in general proceedings. *See Flores-Ledezma v. Gonzales*, 415 F.3d 375, 379 (5th Cir. 2005) (explaining the differences between the two procedures).

The petitioner argues that the Attorney General's "unfettered discretion to choose between expedited removal procedure . . . and the general removal procedure . . . to effectuate the removal of an alien who is not a lawful permanent resident" violates the equal protection component of the Fifth Amendment's due process clause because the government has provided no standards governing the exercise of this discretion. However, the petitioner concedes, as he must, that because no suspect

class is involved, rational basis scrutiny applies to this claim. Of course, "[r]ational basis review begins with a strong presumption of constitutional validity," and "[i]t is Petitioner's burden to show that the law, as-applied, is arbitrary; and not the government's to establish rationality." *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 504 (5th Cir. 2006) (internal citations and quotation marks omitted). Moreover, "[u]nder rational basis review, differential treatment must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (Internal citations and quotation marks omitted).

Significantly, in this case the petitioner himself offers a rational basis for the expedited process, noting in his appellate brief that "the decision seemingly depends solely on how confident the ICE adjudicator is that [an] 'aggravated felony' has been committed." Just so. An adjudicator's assessment that a case is simple as opposed to complex is certainly a rational basis upon which to adopt expedited proceedings in preference to general proceedings, especially when considered in conjunction with Congress's purpose in passing 8 U.S.C. § 1228(b), *i.e.*, "to expedite the removal of criminal aliens" who are not lawful permanent residents, along with the administrative constraints of providing all such aliens with full hearings. *See United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1014 (9th Cir. 2004) (discussing the legislative history of 8 U.S.C. § 1228(b)). Given the utterly straightforward nature of the government's case against the petitioner, and the obvious rationality of the decision to proceed with expedition in his removal, we find no violation of Graham's right to equal protection on this record.

In finding no intrinsic equal protection violation in the expedited removal procedure authorized by § 1228(b), we join at least three of our sister circuits that have addressed this same issue in circumstances very similar to the ones now before us and have reached the same conclusion. *See United States v. Calderon-Segura*, ___ F.3d ___, 2008 WL 80705 (9th Cir., Jan. 9, 2008); *Gonzales v. Chertoff*, 454 F.3d 813, 818 (8th Cir. 2006); *Flores-Ledezma*, 415 F.3d at 381-82.

## *CONCLUSION*

For the reasons set out above, we DENY review of the final order of removal in this case.