NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0513n.06

Case No. 20-4279

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td></td><td rowspan="5"></td></tr>
</table>

|  |  |  |
|---|---|---|
| GUO YAN LIN CASTRO, | ) | **FILED**<br>Nov 10, 2021<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM A FINAL ORDER OF THE |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

SILER, Circuit Judge. Petitioner Guo Yan Lin Castro seeks review of an order issued by an Immigration Judge ("IJ") and affirmed by the Board of Immigration Appeals ("BIA"), denying her applications for asylum, special rule cancellation of removal, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we **DISMISS** the petition as to Castro's asylum application, and we **DENY** the petition as to her remaining applications for relief and protection.

## I. BACKGROUND

In 2011, Castro, a native citizen of the People's Republic of China, was admitted to Saipan, Commonwealth of the Northern Mariana Islands, as a non-immigrant visitor. There, she married a United States citizen who filed an immediate relative visa petition on her behalf; Castro filed an application for adjustment of status at the same time. In 2013, she was paroled into the United

States to pursue her then-pending application for adjustment of status and was authorized to remain in the United States only until November that year. However, she stayed beyond that period and has since remained in the United States. In 2014, United States Citizenship and Immigration Services denied both the visa petition and Castro's application for adjustment of status.

During her unauthorized residence in the United States, Castro has been convicted of or arrested for prostitution-related offenses four times. In 2015, she was convicted of prostitution in Texas. In 2016, she was convicted of prostitution in Georgia. In 2018, she was convicted of solicitation of prostitution in Ohio. Finally, in 2019, Castro was arrested in Michigan for accosting or soliciting prostitution.

Thereafter, the Department of Homeland Security ("DHS") commenced removal proceedings against her, charging her under: (1) 8 U.S.C. § 1182(a)(7)(A)(i)(I), as a noncitizen not in possession of a valid unexpired visa or other entry document at the time of her application for admission, and (2) 8 U.S.C. § 1182(a)(2)(D)(i), as a noncitizen who has come to the United States solely, principally, or incidentally to engage in prostitution, or has engaged in prostitution within ten years of the date of application for a visa, admission, or adjustment of status.

Castro denied both removal charges, and, in the alternative, applied for special rule cancellation of removal for battered spouses, withholding of removal, and protection under CAT. In addition, she submitted corrections to an asylum application that she had filed in 2016; and she provided a written statement to support her applications for relief, reasserting claims of forcible sterilization and domestic violence and adding a religious persecution claim.

An IJ held merits hearings in February and May 2020. During these hearings, Castro testified extensively about, among other things, her prostitution-related offenses. She relayed that she had sought only to provide legal massage services but that her employers pressured her into

providing sexual favors by confiscating her passport, withholding any money she earned, and beating her. According to her testimony, Castro was also raped on two occasions during her work at these establishments. Moreover, she explicitly denied the factual circumstances set forth in various police reports, which detailed the interactions with undercover police officers that led to her arrests in Atlanta and Ohio.

During the February hearing, Annita List, a licensed clinical social worker, opined that Castro was particularly vulnerable to sex trafficking because of the abuse Castro suffered at the hands of her U.S. citizen husband, whom Castro attested had beaten and raped her between 2012 and 2013. Castro asked the IJ to qualify List as an expert witness on the issues of domestic violence and the psychological status of abused women. Over DHS counsel's objection, the IJ approved.

But at the conclusion of the next hearing in May, the IJ issued an oral decision in which he reversed his initial certification of List as an expert witness, explaining that List's experience interviewing sex workers in El Salvador was insufficient to qualify her as an expert capable of rendering a psychological assessment of Castro. He sustained both removal charges against Castro and denied all her applications for relief and protection. First, the IJ denied Castro's application for special rule cancellation of removal, finding her statutorily ineligible on multiple grounds because of her prostitution convictions and concluding that she could not demonstrate the requisite connection between those prostitution convictions and the domestic abuse she suffered to qualify for a waiver. Second, he denied Castro's asylum application as statutorily time-barred because she did not merit any exception to the one-year filing deadline that she had missed. Third, the IJ determined that Castro was not a credible witness—thereby foreclosing her claims for withholding of removal and for protection under CAT—because of discrepancies between her various

immigration forms, as well as between these forms and her testimony, and because of her repeated denials that she ever engaged in prostitution. Accordingly, the IJ ordered Castro removed to China.

Castro appealed the IJ's decision to the BIA. The BIA dismissed Castro's appeal. In addition to adopting the IJ's determinations as to Castro's applications for relief, the BIA found that Castro had failed to substantively challenge the IJ's determinations that her asylum application was time-barred. The BIA thus deemed the issue waived. Moreover, the BIA rejected Castro's claim that the IJ had violated her due process rights by failing to consider country conditions reports issued by the U.S. Department of State, finding that she could not show the requisite prejudice for such a claim. Castro now seeks review of each of her applications for relief and protection.

## II. RELEVANT STANDARDS OF REVIEW

Where the BIA "adopts the IJ's decision and supplements that decision with its own comments," we review the decisions of both the BIA and IJ. *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011). We review constitutional claims and questions of law de novo, while deferring to the BIA's reasonable interpretations of the immigration statutes and regulations that it administers. *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008). We review factual findings, including those relevant to "credibility determinations, denial of asylum applications, withholding of removal, and the CAT," for substantial evidence. *Id.*; *see also* 8 U.S.C. § 1252(b)(4)(B).

## III. DISCUSSION

### A. Asylum

Castro failed to file her asylum application within a year of her last entry into the United States, as required by 8 U.S.C. § 1158(a)(2)(B), and the IJ determined that she could not show an extraordinary circumstance under 8 U.S.C. § 1158(a)(2)(D) to excuse this untimeliness. When she appealed this decision to the BIA, Castro insisted in a single sentence that her personal

circumstances and the changed country conditions in China merited an exception. As a result, the BIA found that Castro had failed to challenge the IJ's determination substantively and deemed the issue waived. Now, Castro repeats that she merits an exception but fails to address the BIA's conclusion that she waived the issue.

We lack jurisdiction to review asylum applications denied for untimeliness, 8 U.S.C. § 1158(a)(3), unless the appeal seeks review of constitutional claims or legal questions. 8 U.S.C. § 1252(a)(2)(D); *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020). Thus, because Castro has failed to identify any error, legal or otherwise, in the BIA's determination that she waived the issue on administrative appeal, we lack jurisdiction to review the denial of her asylum application. We **DISMISS** her petition for review as to her asylum application.

### B. Special Rule Cancellation of Removal for Battered Spouses

Next, Castro seeks review of the denial of her application for special rule cancellation of removal as a battered spouse. To qualify for special rule cancellation of removal, Castro must demonstrate, among other things, that she is not inadmissible for having committed acts that constitute a crime involving moral turpitude ("CIMT"). 8 U.S.C. § 1229b(b)(2)(A)(iv). In her petition for review, Castro contends that her prostitution convictions under the Texas and Georgia statutes are not CIMTs; in the alternative, she argues "that being required to perform sexual favors against her will, and under extreme duress, should not lead to a conclusion that she committed acts of moral turpitude." While our jurisdiction to review denials of such discretionary forms of relief is limited under 8 U.S.C. § 1252(a)(2)(B), we retain jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review questions of law. Thus, we exercise our jurisdiction to review, and ultimately to reject, Castro's challenges.

The term "CIMT" describes conduct "that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general." *Reyes v. Lynch*, 835 F.3d 556, 560 (6th Cir. 2016). In determining whether a particular conviction describes a CIMT, we apply the categorical approach, looking only to the elements described by the statute. *Yeremin v. Holder*, 738 F.3d 708, 715 (6th Cir. 2013). If every offense described in the statute meets the definition of a CIMT, our analysis ends. *Ruiz-Lopez v. Holder*, 682 F.3d 513, 518 (6th Cir. 2012).

Castro insists that her prostitution and solicitation of prostitution convictions under the Texas, Georgia, and Ohio statutes cannot be considered CIMTs because each of these statutes proscribes the solicitation of prostitution, an offense which Castro argues does not involve moral turpitude. But we have already determined otherwise. *See Reyes*, 835 F.3d at 559-60.

Castro argues, in the alternative, that if we find that she "has committed disqualifying crimes of moral turpitude based on the statutory language of the statutes themselves, the question then really becomes whether an undocumented female who is trafficked and bused from state to state to perform sex under the cover of a massage practice, should be deemed to have . . . committed acts which are crimes of moral turpitude." That is not, however, how the categorical approach works. Once we find that every offense described in a statute of conviction qualifies as a CIMT, as we have done here, we stop. *Ruiz-Lopez*, 682 F.3d at 518. Because her convictions qualify as

CIMTs, Castro is statutorily ineligible for special rule cancellation, and we decline to address her remaining objections to the other grounds on which the IJ dismissed her application.[1]

Nor will we disturb the IJ's determination that Castro cannot qualify for a waiver of her inadmissibility. Section 237(a)(7)(A)(i)(III)(bb) of the Immigration and Nationality Act, as referenced by section 240A(b)(5) of that act, permits waiver of the inadmissibility grounds of ineligibility for special rule cancellation if the noncitizen demonstrates a connection between the crime and the noncitizen's having been battered. To establish this requisite connection, Castro offered the testimony of List, a social worker, who opined that Castro was more vulnerable to manipulation by sex traffickers because of the domestic abuse she endured at the hands of her U.S. citizen husband. After reversing his initial determination to qualify List as an expert witness, the IJ found List to be a credible fact witness. Nevertheless, it concluded that Castro's convictions from 2015 to 2018 were too remote in time from the domestic abuse she suffered in 2012 and 2013. Castro now challenges the IJ's decision not to qualify List as an expert witness, arguing that "the tenuous manner in which IJ [sic] so easily and without detailed reasoning changed course . . . struck a violation of due process."

An IJ's decision whether to certify an individual as an expert witness constitutes an evidentiary ruling that falls within his or her "broad discretion." *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005). We review evidentiary rulings by IJs only for due process violations, using a two-step inquiry: first, we determine whether there was a defect in the proceeding; and

---

[1] The IJ also found that Castro was statutorily ineligible for special rule cancellation of removal as a noncitizen who engaged in prostitution within ten years of her application for adjustment of status and as a noncitizen thereby precluded from establishing good moral character. Then the BIA concluded that Castro waived her right to challenge that she had engaged in prostitution. Because we need not address these issues to affirm, we refrain from doing so. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make finding on issues the decision of which is unnecessary to the results they reach.").

second, we determine whether the noncitizen was prejudiced because of it. *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). Where there is no demonstration of prejudice, we need not address the merits of the due process claim. *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008). That is precisely the case here: Castro has not even alleged in the first instance that she was prejudiced by the IJ's decision to consider List a fact witness, rather than an expert witness. We, therefore, reject her due process claim.

Because Castro's prostitution convictions qualify as CIMTs and because she cannot qualify for a waiver of her resulting inadmissibility, we **DENY** her petition for review as to her application for special rule cancellation of removal.

### C. Withholding of Removal and CAT Protection

Next, Castro challenges the IJ's adverse credibility determination. An applicant for withholding of removal and/or protection under CAT must demonstrate to the satisfaction of the IJ that her testimony is credible. 8 U.S.C. § 1158(b)(1)(B)(ii); *see Slyusar v. Holder*, 740 F.3d 1068, 1074 (6th Cir. 2014). And an adverse credibility determination prevents these claims from being considered on their merits. *Zhao v. Holder*, 569 F.3d 238, 249 (6th Cir. 2009). The REAL ID Act permits IJs to consider "the consistency of [an applicant's statement] with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). We exercise our jurisdiction under 8 U.S.C. § 1252(a)(1) to review final orders of removal.[2] And we review

---

[2] Under 8 U.S.C. § 1252(a)(2)(C), we may not review any final order of removal against a noncitizen ordered removed for certain criminal grounds, such as the prostitution offense included in § 1182(a)(2). But Castro was also ordered removed on the separate dispositive ground of 8 U.S.C. § 1182(a)(7)(A)(i)(I) as a noncitizen without a valid unexpired visa at the time of her application for admission. Because we declined to address Castro's inadmissibility under § 1182(a)(2) when determining her ineligibility for special rule cancellation of removal, the 8 U.S.C. § 1252(a)(2)(C) jurisdictional bar does not apply here.

credibility determinations under the highly deferential substantial evidence standard, leaving them undisturbed unless a reasonable adjudicator would be compelled to conclude the contrary. 8 U.S.C. § 1252(b)(4)(B); *Kilic v. Barr*, 965 F.3d 469, 473 (6th Cir. 2020).

In her petition for review, Castro contends that the IJ's failure to assess her demeanor constituted his "chief error." The REAL ID Act, however, is not so restrictive: It lists an applicant's demeanor only as one of many factors the IJ may, but is not required to, consider. 8 U.S.C. § 1158(b)(1)(B)(iii).

In addition, Castro challenges each of the various inconsistencies on which the IJ relied. But because even a single discrepancy may support an IJ's adverse credibility determination, *see Marikasi v. Lynch*, 840 F.3d 281, 288 (6th Cir. 2016) (finding a single inconsistency sufficient under the more stringent pre-REAL ID Act standard), we limit our review to the "significant" inconsistency addressed specifically by the BIA: Castro's repeated denials of having engaged in prostitution.

We recognize increasing awareness around the exploitation specifically of Asian female immigrants by the sex trafficking industry,[3] and we acknowledge that this context may shed light on Castro's own narrative. But this context does nothing to resolve the external inconsistencies in her testimony. Castro unequivocally denied that she had any inappropriate contact with an undercover police officer in Atlanta or that she "offered any sexual service" to an undercover police officer in Ohio. Yet the police reports detailing the officers' encounters with Castro, as well as Castro's resulting convictions for prostitution and solicitation of prostitution, suggest otherwise.

---

[3] *See, e.g.*, Will Yakowicz, *Inside The $4.5 Billion Erotic Massage Parlor Economy*, Forbes (Apr. 4, 2021), https://www.forbes.com/sites/willyakowicz/2021/04/04/inside-the-45-billion-erotic-massage-parlor-economy/?sh=5fd789dc79a8.

Thus, we cannot say that a reasonable adjudicator would be compelled to disagree with the IJ's adverse credibility determination.

Finally, Castro alleges that the IJ's failure to consider the 2018 U.S. Department of State Human Rights Report for China, which discusses the inefficacy of efforts to help protect victims of domestic violence, constituted a due process violation. But the BIA held that Castro could not show the requisite prejudice for a due process claim because the country conditions reports could not rehabilitate Castro's credibility. Because Castro does not meaningfully challenge this conclusion and states only that the "prejudicial failure of the Agency" is "unresolved," we reject her due process claim.

Accordingly, we **DENY** Castro's petition for review as to her applications for withholding of removal and for protection under CAT.

## IV. CONCLUSION

For all the reasons set forth above, we **DISMISS** Castro's petition for review as to her asylum application, and we **DENY** her petition for review in all other respects.