**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAIME GALLEGO-ARROYAVE,

   Petitioner,

v.

ERIC H. HOLDER, JR.,

   Respondent.

No. 12-9537
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

  Jaime Gallego-Arroyave, a native of Columbia, seeks review of an order

entered by the Board of Immigration Appeals (BIA) affirming the removal order of

an Immigration Judge (IJ). The BIA dismissed his asylum claim as untimely, denied

his claim for restriction on removal,[1] and denied his request for voluntary departure.

---

[*]  After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
petition for review. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]  The parties refer to "withholding of removal," a term retained in the
regulations under the Immigration and Nationality Act. *See, e.g.*, 8 C.F.R.
§ 208.16(b). We refer instead to "restriction on removal," pursuant to the

(continued)

We exercise jurisdiction under 8 U.S.C. § 1252(a)(1), dismiss the voluntary-departure claim for lack of jurisdiction, and deny the petition for review.

## I. BACKGROUND

Mr. Gallego[2] entered the United States on February 7, 1999, and was authorized to stay until March 6, 1999, but he did not depart. Consequently, the Department of Homeland Security commenced removal proceedings against him, charging him with removability as an alien who remained in the United States longer than permitted. *See* 8 U.S.C. § 1227(a)(1)(B). He conceded his removability, and requested asylum and restriction on removal. He filed his application for asylum on March 13, 2007, eight years after he arrived in the United States. The IJ held a hearing at which Mr. Gallego and his sister testified.

Claiming past persecution, Mr. Gallego testified that the Revolutionary Armed Forces of Columbia (FARC) attempted to murder his father in 1980 by arranging a motorcycle accident. In his application for asylum and restriction on removal, however, he described the accident as having occurred under circumstances that were not clear. The application also described his father's death in 1990 after he was hit by a truck as happening under strange circumstances, while he testified at the hearing that his father was murdered by FARC.

---

statutory definition. *See* 8 U.S.C. § 1231(b)(3); *Razkane v. Holder*, 562 F.3d 1283, 1285 n.1 (10th Cir. 2009).

[2]    The hearing transcript indicates that petitioner is properly referred to as "Mr. Gallego."

Mr. Gallego also claimed that in 1990 he avoided two bomb explosions because his scheduled arrival had been delayed both times. He testified that in 1992, he was assaulted on the street with a knife and called a "sapo." According to Mr. Gallego, "sapo" is a Spanish word for "snitch." He was injured in the attack and received stitches at a hospital. He did not produce the medical records because the hospital no longer exists. In 1994, the windows of his home were broken and "sapo" was called out. After his mother was elected mayor of their town, Mr. Gallego was stopped on the road in 1998 and given a large sum of cash for his mother to buy supplies for FARC. His mother told him not to worry about it and not to take anything else from them. Mr. Gallego testified that his cousin had been killed by FARC, although his asylum application stated that the cousin had disappeared. Mr. Gallego's mother and sister have traveled to the United States and back to Columbia without incident.

The IJ issued an oral decision concluding that Mr. Gallego's asylum application, filed eight years after he arrived in the United States, was outside the statutory one-year time limit, *see* 8 U.S.C. § 1158(a)(2)(B), and he had not shown that any exceptions applied, *see id.* § 1158(a)(2)(D). The IJ found Mr. Gallego generally credible but he had embellished the circumstances of his father's death and his cousin's disappearance. The IJ denied his application for restriction on removal, concluding that he had "not shown that it was more likely than not that he would face persecution upon return to Colombia based on one of the protected grounds."

Admin. R. at 102. The IJ also denied him voluntary departure because he did not possess a valid passport. The BIA denied relief, concluding that the asylum application was correctly dismissed as untimely and affirming the IJ's determinations on the other claims.

On appeal, Mr. Gallego asserts that the denial of his asylum application as untimely violated the Constitution. In the alternative, he contends that he demonstrated extraordinary or changed circumstances warranting asylum. He further asserts that the BIA erred in its credibility determination and in its finding that he had failed to establish persecution to warrant restriction on removal. Finally, he contends that he was eligible for voluntary departure based on his expired passport and other identification documents.

## II. DISCUSSION

### A. Standards of Review

A single member of the BIA entered the BIA's brief affirmance order under 8 C.F.R. § 1003.1(e)(5). We therefore review the BIA's decision as the final order of removal but "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). In addition, "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* (internal quotation marks omitted).

Although we review the BIA's legal determinations de novo, we review its factual findings under the substantial evidence standard. *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009). Thus, we must "look to the record for 'substantial evidence' supporting the agency's decision: [O]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (internal quotation marks omitted). "The agency's findings of fact are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Ismaiel v. Mukasey*, 516 F.3d 1198, 1204 (10th Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B) (further quotation omitted)). "[O]ur review is confined to the reasoning given by the [agency], and we will not independently search the record for alternative bases to affirm." *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011) (internal quotation marks omitted).

### B. Asylum

Asylum applicants are required to file their applications within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). An exception to this one-year filing deadline may be given if the application shows changed or extraordinary circumstances that affected the applicant's ability to meet the deadline. *Id.* § 1158(a)(2)(D). This court lacks general jurisdiction to review a determination relating to the timeliness of an asylum application. *Id.* § 1158(a)(3); *Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006). Although "challenges directed

solely at the agency's discretionary and factual determinations remain outside the scope of judicial review," *Diallo*, 447 F.3d at 1281, this court does have jurisdiction to review a claim that the BIA's application of the one-year deadline violated his constitutional rights, 8 U.S.C. § 1252(a)(2)(D); *Diallo*, 447 F.3d at 1281. Although Mr. Gallego did not raise his constitutional claim to the BIA, "exhaustion of constitutional challenges to the immigration laws [is not required] because the BIA has no jurisdiction to review such claims," *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1094 (10th Cir. 2008) (internal quotation marks omitted).

Mr. Gallego first asserts that the one-year asylum deadline violates the Constitution because it does not serve its intended purpose of preventing aliens from delaying their departure from the United States. He maintains that an alien can achieve a departure delay by filing for restriction on removal, a form of relief not subject to the one-year time bar. While it is true that a request for restriction on removal is not subject to the time bar, *Wei v. Mukasey*, 545 F.3d 1248, 1250 (10th Cir. 2008), those applicants must meet a stricter standard than asylum applicants. *See INS v. Cardoza Fonseca*, 480 U.S. 421, 444 (1987) (stating that refugees "who can show a clear probability of persecution are *entitled* to mandatory suspension of deportation and *eligible* for discretionary asylum," and refugees "who can only show a well-founded fear of persecution are not *entitled* to anything, but are *eligible* for the discretionary relief of asylum"). The Supreme Court has endorsed the distinction between these categories of refugees. *See id.* at 441. Thus we perceive no

constitutional violation.  We consider below Mr. Gallego's arguments concerning restriction on removal.

As part of his constitutional challenge, Mr. Gallego argues that the one-year deadline was improperly applied to deprive him of asylum even though he "expressed a 'reasonable possibility' of his legitimate fear of being returned to his home country," which prevented him from timely filing for asylum.  Aplt. Opening Br. at 27.  But this contention is in fact a claim that his fear qualified as extraordinary or changed circumstances, which this court is without jurisdiction to review.  *See* § 1158(a)(3); *Diallo*, 447 F.3d at 1281.[3]  Accordingly, we reject his constitutional challenges.

## C. Credibility

Mr. Gallego complains that the IJ and the BIA found that he "embellished" the evidence concerning his father's death and his cousin's disappearance.  He contends that the IJ should have accepted his explanations for why his hearing testimony differed from his prior written statements.  He also argues that the IJ improperly required him to produce medical records from a hospital that no longer exists.

The IJ was explicitly authorized to weigh the consistency of Mr. Gallego's written and oral statements.  8 U.S.C. § 1229a(c)(4)(C).  This court does not evaluate

---

[3]     Mr. Gallego's brief also mentions that the one-year deadline violated his due process rights, but he has provided no argument or authority to support such a claim. Therefore, we do not address it.  *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 (10th Cir. 2012) (declining to address assertion not supported by argument or legal authority).

the credibility of witnesses. *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006). Rather, "[c]redibility determinations are factual findings subject to the substantial evidence test." *Sarr*, 474 F.3d at 789 (internal quotation marks and ellipsis omitted). We conclude that substantial evidence supports the BIA's determination that parts of Mr. Gallego's hearing testimony were inconsistent with his written documents. As for the lack of hospital records, the IJ observed only that the lack of hospital records indicated that Mr. Gallego's injuries did not require hospitalization, and he does not claim they did.

## D. Restriction on Removal

Mr. Gallego asserts that the BIA improperly denied his request for restriction on removal based on his past persecution in Columbia and his fear that he would be persecuted if he were to return to Columbia. "To obtain restriction on removal, the alien must demonstrate that [his] 'life or freedom would be threatened in [the proposed country of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'" *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (quoting 8 U.S.C. § 1231(b)(3)(A)). Mr. Gallego claims persecution because of his political opinion—he supports the government against FARC—and his membership in a particular social group—he is a member of a wealthy family of business people, entrepreneurs, influential people, and government representatives.

To establish persecution, Mr. Gallego relies on the following evidence: his father's 1980 motorcycle accident and 1990 truck accident that caused his death, two missed bomb explosions in 1990, the 1992 knife attack during which he was called a "sapo," the 1994 broken windows at his home and accusation of being a "sapo," the money given to him in 1997 for his mother to buy supplies for FARC, and his cousin's disappearance. The IJ determined that the attacks on his father and his cousin's disappearance were not persecution of Mr. Gallego, and that the knife incident, although serious, was not sufficiently severe to induce him to leave Columbia at that time. The IJ decided that the remaining incidents were not sufficiently severe to amount to persecution. The IJ found further that Mr. Gallego had not established that any claimed persecution was on account of his political opinion or membership in a particular social group. The BIA incorporated the IJ's reasons in its decision and upheld the ruling.

We conclude that the BIA's determination that these events are not sufficiently severe to amount to persecution is supported by substantial evidence. *Cf. Ritonga*, 633 F.3d at 976 (concluding alien had not established persecution through evidence of one occasion in which she was physically injured, an attack on her car, and a church-bombing and rioting not individually targeting or harming alien); *Tulengkey*, 425 F.3d at 1280-81 (noting "denigration, harassment, and threats" are insufficient to establish persecution; finding no past persecution where alien was robbed, fondled, and suffered a minor head injury). Even considering the incidents collectively,

recognizing that "the cumulative effects of multiple incidents may constitute persecution," *Ritonga*, 633 F.3d at 975, the BIA's determination that Mr. Gallego did not establish past persecution is supported by substantial evidence. Consequently, we need not consider whether any persecution was on account of political opinion or membership in a social group.

Even though Mr. Gallego failed to prove past persecution, we consider his claim of a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b). "Without a showing of past persecution, an alien must demonstrate that it is more likely than not that he will be individually persecuted in the future." *Witjaksono*, 573 F.3d at 977. "For a fear of future persecution to be well-founded, it must be both subjectively genuine and objectively reasonable." *Ritonga*, 633 F.3d at 976 (internal quotation marks omitted).

Mr. Gallego's claim of future persecution is based on the same events he relied on to establish past persecution. Having found that those events do not rise to the level required to prove past persecution, we conclude that they also cannot establish a well-founded fear of persecution.

After reviewing the record, we cannot conclude that a reasonable fact-finder would be compelled to find it more likely than not that Mr. Gallego would be persecuted upon his return to Columbia. Accordingly, the BIA did not err in finding that he failed to show past persecution or a well-founded fear of persecution.

## E. Voluntary Departure

Finally, we address Mr. Gallego's claim that the BIA erred in denying him post-hearing voluntary departure because he did not have a valid passport. Pursuant to 8 U.S.C. § 1229c(b), "[t]he Attorney General may permit an alien voluntarily to depart the United States at [his] own expense" if an IJ grants voluntary departure and makes certain findings. Although "constitutional claims involving voluntary departure are within our jurisdiction," *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007), Mr. Gallego does not make such a claim. Therefore, "we lack jurisdiction to review [the] immigration judge's refusal to grant voluntary departure," and we dismiss this claim. *Ekasinta v. Gonzales*, 415 F.3d 1188, 1190, 1195 (10th Cir. 2005) (citing 8 U.S.C. § 1229c(f)).

## III. CONCLUSION

For the reasons stated, Mr. Gallego's voluntary departure claim is dismissed and the petition for review is otherwise denied.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge