NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0151n.06

No. 25-3414

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 26, 2026
KELLY L. STEPHENS, Clerk

CHINEDU ONYENOBI,

    Petitioner,

v.

PAMELA BONDI, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW OF A DECISION OF THE BOARD OF IMMIGRATION APPEALS

OPINION

---

Before: KETHLEDGE, WHITE, and LARSEN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Petitioner Chinedu Onyenobi seeks review of the Board of Immigration Appeals' dismissal of his appeal from an immigration judge's denial of his motion to reopen his removal proceedings and rescind his *in absentia* order of removal. We **DENY** the petition for review.

## I. BACKGROUND

Onyenobi, a citizen of Nigeria, was admitted to the United States as a lawful permanent resident (LPR) on October 8, 2000. On February 20, 2008, he pleaded guilty to a felony forgery charge and was sentenced to two years of community supervision. On October 30, 2015, the Department of Homeland Security (DHS) detained Onyenobi as he was returning from a trip to Nigeria and attempting to enter the United States as an LPR. DHS served Onyenobi with a Notice to Appear that stated he was removable under Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act (codified as 8 U.S.C. § 1182(a)(2)(A)(i)(I)) based on his conviction of a crime

involving moral turpitude. The Notice to Appear did not set a date or time for his hearing. DHS released Onyenobi from custody on a humanitarian parole. Onyenobi alleges that DHS confiscated his means of identification, including a card showing his status as an LPR, his Social Security card, his Nigerian passport, and his Texas driver's license, and did not provide him with temporary identification on release.

On September 11, 2018, Onyenobi failed to appear for a hearing before an immigration judge ("IJ") in Houston, Texas. Onyenobi had received written notification of the time, date, and location of the hearing. The IJ found that the documentary evidence supported the factual allegations in the Notice to Appear, including the allegation that Onyenobi was removable based on his criminal conviction, and ordered Onyeonbi's removal *in absentia*. On November 9, 2018, Onyenobi moved to reopen his case, stating that he had moved to Michigan for a job, which had caused him to miss the hearing. His unopposed motion was granted and his case was transferred to Detroit, Michigan.

On March 4, 2020, Onyenobi again failed to appear for a scheduled hearing and an IJ issued a second order of removal *in absentia*. On March 5, 2021, Onyenobi filed a motion to reopen his case under 8 C.F.R. § 1003.23(b) and rescind his *in absentia* order of removal under 8 U.S.C. § 1229a(b)(5)(C)(ii), contending that he had not received notice of the hearing because it was mailed to an old address. The IJ denied his motion, finding it untimely. The IJ also found Onyenobi's lack-of-notice argument "disingenuous" because he had been personally served with a Notice to Appear at a prior hearing and had acknowledged the hearing date. AR 217-18. Onyenobi appealed to the Board of Immigration Appeals ("BIA"), arguing that he had not received proper notice of the hearing and that exceptional circumstances warranted reopening the proceedings. As relevant here, Onyenobi contended that when he was released from detention in

2015, DHS confiscated his LPR card, Social Security card, Texas driver's license and Nigerian passport, making it difficult for him to find employment and to obtain counsel.

The BIA dismissed Onyenobi's appeal, rejecting his notice argument for the same reason the IJ did—because he was personally served with the notice of hearing at a prior hearing. The BIA also rejected Onyenobi's argument that DHS failed to provide statutorily compliant notice because his Notice to Appear lacked information about the date and time of his hearing. Finally, the BIA did not consider Onyenobi's argument that DHS failed to provide him temporary evidence of LPR status following his detention because it was not raised before the IJ in the first instance. The BIA also noted that the argument was "not relevant to [Onyenobi's] request to rescind his in absentia removal order." AR 4. Onyenobi then filed this petition for review.

## II. DISCUSSION

### A. Standard of Review

We review the BIA's decision as the final agency determination. *Turcios-Flores v. Garland*, 67 F.4th 347, 353 (6th Cir. 2023). Here, because Onyenobi "is removable by reason of having committed a crime of moral turpitude," we can review only "constitutional claims or questions of law" raised by his petition. *Gutierrez v. Sessions*, 887 F.3d 770, 774 (6th Cir. 2018) (internal quotation marks omitted); *see* 8 U.S.C. § 1252(a)(2)(C)-(D). We review such questions de novo. *Gutierrez*, 887 F.3d at 774.

In general, "only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal," *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) (cleaned up)), because, under 8 U.S.C. § 1252(d)(1), federal courts cannot exercise jurisdiction over a removal unless the petitioner has exhausted all administrative remedies. We have suggested, however, that the

exhaustion requirement does not apply to constitutional claims over which the BIA lacks jurisdiction. *See Sterkaj*, 439 F.3d at 279 ("an alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges)"). Even so, we have required petitioners to exhaust due process claims before the BIA in situations where the BIA could have corrected the error. *Id.*; *Singh v. Rosen*, 984 F.3d 1142, 1156 (6th Cir. 2021) ("Most due-process claims do not challenge a statute or regulation (the type of claim that the Board cannot consider); they challenge the procedure by which an immigration judge resolved the case (the type of claim that the Board can consider).").[1]

## B. Discussion

### 1.

Onyenobi argues that his removal proceedings were fundamentally unfair because DHS violated his due process rights when it confiscated his proof of LPR status and other forms of identification without a hearing. And he contends that he was not required to exhaust his administrative remedies on this claim because it is a constitutional claim over which the BIA lacks jurisdiction.

"Fifth Amendment guarantees of due process extend to [noncitizens] in deportation proceedings, entitling them to a full and fair hearing." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016) (quoting *Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001)). An LPR

---

[1] Other circuits have taken a similar approach to constitutional claims raised for the first time on appeal. *See Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) ("Claims of due process violations, except for procedural errors that are correctable by the BIA, are generally not subject to the exhaustion requirement."); *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994) ("Because the BIA has no jurisdiction to adjudicate constitutional issues, the Act's exhaustion requirement does not preclude petitioners from raising them for the first time before the Court of Appeals."); *Gallego-Arroyave v. Holder*, 505 F. App'x 749, 752 (10th Cir. 2012) ("Although Mr. Gallego did not raise his constitutional claim to the BIA, 'exhaustion of constitutional challenges to the immigration laws [is not required] because the BIA has no jurisdiction to review such claims'") (quoting *Vicente–Elias v. Mukasey*, 532 F.3d 1086, 1094 (10th Cir. 2008)).

therefore "is entitled to notice of the nature of the charge and a hearing at least before an executive or administrative tribunal" before being deported. *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597 (1953). We have also applied due process protections to noncitizens in adjustment-of-status cases. *See Amadou v. INS*, 226 F.3d 724, 728 (6th Cir. 2000) (due process rights during asylum hearing); *Alhousseini v. Sessions*, 751 F. App'x 674, 677 (6th Cir. 2018) (same). And, as Onyenobi notes, 8 C.F.R. § 264.5(g) provides that an LPR in deportation or removal proceedings is entitled to evidence of LPR status in the form of a temporary permanent resident document valid through the conclusion of the proceedings.

When evaluating a petitioner's allegation of a due process violation, we ask "whether there was a defect in the removal proceeding" and "whether the [noncitizen] was prejudiced because of it." *Bi Qing Zheng*, 819 F.3d at 296 (quoting *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005)). To establish prejudice, the petitioner "must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." *Id.* at 297 (quoting *Graham v. Mukasey*, 519 F.3d 546, 549-50 (6th Cir. 2008)).

Onyenobi's due process claim fails for two reasons. First, he does not explain how the purported due process violation—DHS's confiscation of his proof of LPR status and other forms of identification without a hearing and without providing temporary documentation—caused him to suffer prejudice in the proceedings before the IJ or the BIA. Assuming for the sake of argument that DHS violated Onyenobi's due process rights by confiscating his documents and failing to provide him with temporary evidence of LPR status, Onyenobi must also show that he was prejudiced by the violation. He argues that the violation rendered the removal proceedings "fundamentally unfair" and prevented him from presenting his case because, without identification, he was "not able to work so as to be able to provide for himself and his family and

as well hire an attorney." Petitioner's Br. at 26-27. He further argues that DHS released him from detention despite his criminal conviction "because he had compelling equities." *Id.* From that, he infers that he had "a strong case" and that, with counsel, "it was likely he would win." *Id.*

But beyond these general assertions Onyenobi does not explain what would have changed if he had been able to obtain counsel. He concedes that he is removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I) because of his conviction of a crime involving moral turpitude, but he does not identify any arguments he would have raised before the IJ to overcome that fact had he appeared at the March 4, 2020 hearing, with or without counsel. Further, because he does not dispute that he failed to attend the hearing, he could not succeed on his motion to reopen without demonstrating, under 8 U.S.C. §1229a(b)(5)(C), that either (i) exceptional circumstances caused his failure to appear, or (ii) he did not receive proper notice. Now represented by counsel, he concedes that he received proper notice and makes no clear argument in support of exceptional circumstances. And although Onyenobi references "compelling equities" that he says would have allowed him to "win" below, he does not elaborate on those equities except to focus on his lack of funds. Petitioner's Br. at 26-27. He does not explain how he would have convinced the IJ that he was not removable or excused his failure to appear for his hearing. He has therefore given us no basis to believe that the purported due process violation led to a substantively different outcome in his removal proceedings. Accordingly, he has failed to demonstrate prejudice. *See Bi Qing Zheng*, 819 F.3d at 297.

Second, to the extent the purported due process violation is relevant to his removal proceedings, Onyenobi was required to exhaust his claim before the BIA. Onyenobi is correct that the BIA lacks jurisdiction over some constitutional claims. But we have repeatedly held that petitioners are required to exhaust correctable due process claims before the BIA. *See Singh*, 984

F.3d at 1156 (collecting cases).  Onyenobi's due process claim alleges a correctable error.  Again, assuming for the sake of argument the validity of his due process claim and that the violation affected his ability to obtain counsel and attend the hearing, the BIA has jurisdiction to address these correctable constitutional defects.  Onyenobi could have argued that the alleged due process violation interfered with his right to counsel.  *See Cuevas-Nuno v. Barr*, 969 F.3d 331, 336 (6th Cir. 2020).  And he could have argued that the due process violation, and attendant financial hardship, constituted an "exceptional circumstance" excusing his failure to appear and entitling him to rescission of the *in absentia* order of removal.  8 U.S.C. §1229a(b)(5)(C)(i).  At bottom, Onyenobi's due process claim attacks the resolution of his case, not a regulatory or statutory scheme.  It is, therefore, the type of claim that the BIA can resolve, and thus the type of claim he was required to exhaust before the BIA.  *See Singh*, 984 F.3d at 1156.  And because he failed to properly raise his due process claim before the BIA, we cannot consider it now.[2]

2.

In his appeal to the BIA, Onyenobi argued that he did not receive proper notice of the hearing because he did not receive notice in the form of a "single statutorily compliant document." AR 33 (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 163 (2021)).  He now concedes that intervening case law forecloses that argument.  In *Campos-Chaves v. Garland*, 602 U.S. 447 (2024), the Supreme Court held that a statutorily deficient Notice to Appear can be cured by subsequent Notices of Hearing.  Given that holding, the BIA did not err in denying Onyenobi's appeal based on a lack of notice.

---

[2] Onyenobi does not argue that he properly raised his due process claim before the BIA.  Although he did argue before the BIA that the DHS confiscated his identification documents, interfering with his ability to find employment and obtain counsel, the BIA did not consider the argument because he failed to raise it before the IJ in the first instance.  Onyenobi thus did not properly raise his due process claim before the BIA, precluding our review here.  *See Singh*, 984 F.3d at 1155 ("To raise a claim *properly*, a party generally must comply with the agency's procedural rules for how to raise it.").

## III.  CONCLUSION

For the reasons stated, we **DENY** the petition for review.